# IN THE UNITED STATES DISTRICT COURT FOR
# THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GORDON ROY PARKER,** | : | **CIVIL ACTION NO. 15-3304** |
| a/k/a "Ray Gordon" | : | |
| Plaintiff | : | |
| **v.** | : | |
| | : | |
| **JACQUELINE FAY GOLDHAGEN** | : | |
| a/k/a Jacqui Holland | : | |
| Defendant | : | |

## ORDER

AND NOW, this _____ day of _____, 2015, upon consideration of Defendant Jacqui Holland's Rule 11 Motion for Sanctions, it is hereby ORDERED that an award of reasonable attorneys' fees, costs, and expenses associated in responding to this instant action against Plaintiff Ray Gordon. Counsel for Defendant shall file a fee petition within 60 days of the entry of this Order.

It is further ORDERED that upon finding from the records of this Eastern District Court that (1) Plaintiff has repeatedly abused the judicial process by his serial filing of *pro se* Complaints that were all dismissed; (2) Plaintiff was given notice in Defendant's Rule 11 Motion that a potential inunction to curb his filing of new Complaints was to be considered, and therefore had an opportunity to oppose the Court's Order; and (3) under the specific circumstances of the case, and pursuant to 748 28 U.S.C. § 1651(a): Plaintiff is enjoined from filing further civil action against either Defendant and/or Defendant's undersigned counsel in any court without first receiving approval from a judge of this Court.

BY THE COURT:

_____
                                      J.

## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **GORDON ROY PARKER,** | : |
| a/k/a "Ray Gordon" | : |
| Plaintiff | : |
| **v.** | : |
|  | : |
| **JACQUELINE FAY GOLDHAGEN** | : |
| a/k/a Jacqui Holland | : |
| Defendant | : |

**CIVIL ACTION NO. 15-3304**

### DEFENDANT'S RULE 11 MOTION FOR SANCTIONS

Defendant Jacqueline Holland (misspelled in the Complaint and caption), by and through her undersigned counsel, respectfully moves under Fed. R. Civ. P. 11 for an award against Plaintiff, Gordon Ray Parker ("Plaintiff"), for attorneys' fees, costs and expenses incurred in having to defend this vexatious Complaint that was instituted maliciously and without good cause, and is forcing Defendant, a citizen of California, to participate in this action despite the lack of personal jurisdiction over Defendant. The Complaint's clear lack of merit, and Plaintiff's blatant violations of Rule 11 are manifest, and his penchant to file additional retaliatory and harassing *pro se* lawsuits also warrants an injunction to require that Plaintiff obtain court approval before suing Defendant and her counsel in the future for any matter related to this action.

In support of the Motion, Defendant relies on the following, as well as the accompanying Memorandum and exhibits which are incorporated by reference:

1.       Defendant is a movie and television actress and a model.  Defendant's roles include parts on popular syndicated network and cable television shows such as "*How I Met Your Mother*," "*Desperate Housewives*,"  "*Conan*,"  and "*True Detective*," as well roles in movies such as *My Best Friend's Girl* (starring Jason Biggs and Kate Hudson), and numerous

short films and television movies.  Defendant has been cast often in the role of the beautiful

blonde in a bikini – but she also has been in comedic works and serious performances.  Recently,

after completing a professional, certified training course, Defendant began establishing a career

in the field of hypnotherapy.

2.      Plaintiff discovered Defendant through searching the Internet, and apparently

became fixated on her.  He schemed to make contact with her on false pretenses as a potential

customer for a video on therapeutic hypnosis to help him improve his "chess game", and then

schemed further to perpetrate contact with Defendant by posting derogatory reviews about

Defendant online, and when that did not work, filing the instant *pro se* Complaint which

ensnared Defendant and forced her to interact with Plaintiff since she was sued by him.

3.      The offending *pro se* Complaint was filed by Plaintiff solely for the improper

purpose of manufacturing and coercing Defendant to participate in Plaintiff's fantasy world as a

Defendant in this lawsuit, and also for the purposes of continuing, extending, and creating a false

aura of *official legitimacy* for the malicious campaign Plaintiff has been carrying out on

numerous Internet websites, through Twitter, and email in which Parker has been incessantly,

and obsessively stalking, preying on, bullying, harassing, and attempting to extort Defendant.

4.      Plaintiff is, according to websites and other links from Google searches, a reputed

cyber-bully and cyber-stalker who harasses people on the Internet, Twitter, and email.  Plaintiff

and Defendant are, and were, complete strangers.  Plaintiff sought out Defendant on the Internet

to purchase a video of Defendant.[1]

_____

[1] According to the Complaint, Plaintiff admits that he and Defendant are strangers who never met, or even spoke on
the telephone. Rather, Plaintiff saw Defendant in a YouTube video on hypnotherapy that titillated him; and then
Plaintiff searched the web for ways to make contact with Defendant. When he found a website that advertised her
hypnosis services, Plaintiff offered to pay Defendant a thousand dollars to make a custom hypnosis video for him,
supposedly to improve Parker's "chess game". Although through email correspondence Defendant agreed to
Plaintiff's proposal, suddenly, Plaintiff changed his mind, withdrew the offer, and then obsessively and without any

Footnote continued on next page

5.       As we discuss in greater detail in the Memorandum, according to the Opinions written by judges in the Eastern District and the Third Circuit, Plaintiff is also a "serial" filer of many *pro se* complaints in this federal district court where his actions have been dismissed universally because Plaintiff repeatedly sued parties who had no ties to Pennsylvania and were not subject to personal jurisdiction; violated the rules governing pleading; made frivolous and unsubstantiated claims; and failed to allege any cause of action for which relief could be granted. Similarly, all of Plaintiff's *pro se* appeals to the Third Circuit have likewise resulted in the rejection of his suits.

6.       The Complaint itself reveals that Plaintiff filed it not to gain any judicial relief, but rather for improper purposes. For example, Plaintiff is using the fact of the filing of this lawsuit in court in order to gain benefits outside of Court. These include:

(a)      Using the federal court system to couple Defendant to Plaintiff and force his way into her daily life;

(b)      Using the Complaint as a weapon against Defendant by spreading it online and extorting her to communicate with Plaintiff;

(c)      Using the federal court system to lend credibility to Plaintiff's claims against Defendant; and

(d)      Using the Complaint as a means of promoting his business as a Pickup Artist.

7.       The Motion discusses in detail how and why Plaintiff filed this Complaint for improper purposes and not for obtaining judicial relief. Set forth below is a summary.

---

ostensible reason, began to trash Defendant's reputation at Yelp.com, and to further smear her online on numerous other websites and on Twitter. Thereafter, on a daily basis, Plaintiff has been stalking Defendant, and making derogatory comments coupled with a link to, or quote from his Complaint filed in this Court, wherever he found online, some reference to Defendant, or an activity or performance she was involved in.

8.      Plaintiff filed this lawsuit to improperly attach the imprimatur of a federal court lawsuit to his Internet and Twitter rantings about Defendant since Plaintiff has repeatedly linked his postings on the Internet, Twitter, and elsewhere to copies of his Complaint that he himself published on his websites, or to other places online where complaints filed in federal court can be downloaded.

9.      After Defendant refused to have any personal communication with Plaintiff, and ignored him, he began to threaten her with additional legal proceedings and he increased his cyber-stalking activities with the implication in his emails that if Defendant would communicate with him, he would stop his efforts to ruin her reputation and her peace of mind.[2]

10.      Just as in his Internet rantings, Plaintiff's Complaint exposes his deviant and perverse fixation with Defendant's appearance, sexuality, and what Plaintiff has identified in his Complaint as her sexy body, voice, and movies. Thus, the Complaint itself, scandalously, is littered with gratuitous, irrelevant, and puerile sexual comments and unseemly references to Defendant such as when Plaintiff described Defendant lasciviously in the Complaint as:

(a)      An actress known for "**extremely sexy** PG-13 work (e.g., *Bikini Avengers, Hollywood Sex Wars, Life as a Hot Loser,* etc.)" (Compl. at ¶1);

(b)      Being "**very sexy**" on a YouTube video (Compl. at ¶10);

(c)      Being "**a sexy female hypnotist** [who] uses her **beauty** and powerful hypnosis technique of the kind possessed by Defendant (and few others, let alone **sexy female** others)" Compl. at ¶ 11);

(d)      Having a "willingness **to be sexy on camera**" Compl. at ¶12);

---

[2] Plaintiff demonstrated an unmistakably dangerous, sexual fixation and obsession with Defendant, and after Defendant cut off personal communication with Plaintiff, he increased the intensity of his campaign to obsessively stalk, bully, harass, defame and otherwise attack Defendant on numerous websites, Twitter, email and other places where Plaintiff threatened to continue to ruin Defendant's reputation unless she agreed to communicate with him.

(e)     "Her eyes were **desirable enough to induce** pupil dilation" (Compl. at ¶12);

(f)     "Defendant offered *custom fetish videos* … to an audience which includes men who, like Plaintiff, enjoy being hypnotized by **beautiful women**." (Compl. at ¶`14);

(g)     "(Apparently) embraced the **sexy,** cutting-edge side of hypnosis," (Compl. at ¶15);

(h)     "Not long after first viewing her YouTube video, Plaintiff offered Defendant $1,000.00 to make a "**sexy** hypnosis video for chess improvement,"[3]

11.     Besides being presented for the improper purpose of adding the fake gloss of legitimacy that would be implied from the imprimatur of an officially filed Complaint in a federal court, Plaintiff further violated Rule 11(b)(1) by filing the Complaint for the improper purpose of

(a)     Settling old scores with named individuals from the long ago past who are utterly irrelevant to Defendant;

(b)      Justifying why Plaintiff was at war with a bunch of his life-long enemies, boogeymen and hobgoblins;

(c)     To explain his motivation for filing multiple frivolous suits that were thrown out years ago by judges in the Eastern District;

(d)     To put on the record his autobiography in a self-aggrandizing, stream of consciousness style that went on for 36 straight pages without mentioning Defendant, or alleging anything whatsoever to do with Defendant, this case or any issue that the Court could decide. (Compl. at ¶¶16 – 88).

_____

[3] Plaintiff's Obsession, of which his Complaint is demonstrative evidence that this lawsuit was, and is designed to provoke a response (and personal interaction) from Defendant, a model and actress who had no association with Plaintiff except for her response to an uninvited business proposal, but for whom Plaintiff has demonstrated a lascivious, prurient obsession. A Complaint may not be properly used under Rule 11 of advancing Plaintiff's romantic or lustful desires; yet his Complaint evinces a motive, attitude and scary obsession with Defendant's sexuality and beauty that would get Plaintiff kicked off of a dating website, or thrown out of a bar if he verbalized to Defendant what he wrote in the Complaint.

(e)      To file a supposed RICO Count against "No one" where he wrote what could only be described as a blog or polemic, albeit one that was written like drivel, and was inscrutable, rambling and all but unreadable. (Compl. at ¶¶ 73 – 88).

12.      Plaintiff violated Rule 11(b)(2) by suing Defendant, a resident of California with zero ties to Pennsylvania, and not subject to its Long Arm Statute or any other act that would give the Court personal jurisdiction even though when Plaintiff tried the same stunt in earlier cases for different out of state defendants he sued *pro se*, the judges painstakingly explained to him in their Orders why his claims had to be dismissed for lack of personal jurisdiction.

13.      Plaintiff further violated Rule 11(b)(2) by seeking to base his defamation case on Defendant's link to an Internet page that discussed Plaintiff's reputation and claimed it was sordid; but in the Complaint itself, Plaintiff made reference to Section 230 of the Communications Decency Act of 1996, 47 U.S.C. § 230 ("Section 230"), which provided that Defendant's link to a website cannot be the subject of any action for defamation. *See*, *Barrett v. Rosenthal*, 40 Cal. 4th 33 (2006) (ruling that user of interactive computer services was immune from defamation liability for posting information passed to her by a third-party publisher); *Zeran v. America Online, Inc.*, 129 F.3d 327, 331–33 (4th Cir. 1997) ("Subjecting Internet service providers and users to defamation liability [for third-party published content] would tend to chill online speech."). Indeed, one of Plaintiff's own cases was dismissed by the district court and the dismissal was affirmed because there was no liability under Section 230 for referencing content on linked websites. See, *Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 504 (E.D. Pa. 2006) *aff'd*, 242 F. App'x 833 (3d Cir. 2007).

14.      In violation of Rule 11(b)(3), Plaintiff fraudulently attempted to create doubt about the facts he knew were true in a transparent effort to survive a motion to dismiss. For example in ¶ 94 Plaintiff contends that "Defendant has not proven the third-party origination of

the content required for immunity," when talking about the content of what Plaintiff calls the

"ED" website which Plaintiff himself alleges he asked the "ED administrators to delete the ED

page" (*See,* Compl. at ¶44), thus establishing that Defendant was known by Plaintiff to not be the

"originator" of the content Plaintiff claims in the Complaint contains the defamatory statement

that he is a pedophile, and the other wrongs.

15.     Plaintiff also violated  Rule 11(b)(3) when he accused Defendant of breaching the

contract, but in ¶ 25, he claims that when he disagreed with where Defendant instructed Plaintiff

to send payment for the custom video he asked Defendant to make,

> Plaintiff fired Defendant, due to her extreme lack of ethics, telling her only that she
> had "flunked an audition [he] wasn't even giving," as there was no need to inform
> someone with whom Plaintiff was breaking contact any further regarding why.  In
> the letter, Plaintiff requested that Defendant never contact him again.

This kind of nonsensical gibberish makes a mockery of litigation in the federal courts.

16.     The Memorandum discusses in greater detail additional reasons why Plaintiff

must be sanctioned harshly under Rule 11.

17.     In addition to the ordinary Rule 11 sanctions, given Plaintiff's serial filing of *pro*

*se* cases that all have been dismissed by judges of the Eastern District and the Third Circuit, as

well as his history of retaliating and suing lawyers for his original lawsuit victims, Defendant

seeks relief in the form of an injunction. This relief is warranted under 28 U.S.C. § 1651(a) to

curb future filings against Defendant and her counsel because of:

(a)     Plaintiff's history of litigation and in particular his habitual vexatious,

harassing nature;

(b)     Plaintiff's motive in pursuing the litigation demonstrates he does not care

whether he has an objective good faith expectation of prevailing;

7

       (c)     Plaintiff's cases are always filed on a *pro se* basis because no responsible attorney would risk the sanctions that would be likely if a lawyer filed the frivolous and vexatious cases he has filed;

       (d)     Plaintiff's numerous frivolous and vexatious lawsuits have forced individuals in faraway states to incur the expense and hardship of paying for counsel here, and his cases, all of which were dismissed have caused needless expense to other parties, and has posed an unnecessary burden on the courts and their personnel; and

       (e)     No other sanctions would be adequate to protect the courts and other parties.

     In support thereof, Defendant incorporates herein the accompanying Memorandum of Law. For all of the reasons presented therein, this Court should grant Defendant's Motion and impose sanctions, pursuant to Rule 11, against Plaintiff for the initiation and maintenance of this improvident and improper lawsuit.[4]

---

[4] The Third Circuit and the Eastern District have recognized the authority to enter injunctions under 28 U.S.C. § 1651(a) to protect against the abuses of serial *pro se* filers of vexatious cases. *See Matter of Packer Ave. Associates*, 884 F.2d 745, 746-48 (3d Cir. 1989); *Brow v. Farrelly,* 994 F.2d 1027, 1038 (3d Cir. 1993); and *Danihel v. Office of the President,* No. CIV.A. 14-6880, 2015 WL 1954269, at *2 (E.D. Pa. Apr. 29, 2015).

Wherefore, Defendant requests that the Court grant this Motion and enter sanctions against Plaintiff as requested, and provide whatever relief is just and appropriate under the circumstances.

Respectfully submitted,

_____
Gary Green, Esquire
Attorney I.D. PA 15730
**SIDKOFF, PINCUS & GREEN, P.C.**
2700 Aramark Tower
1101 Market Street
Philadelphia, PA  19107
(215) 574-0600 (office)
(215) 574-0310 (fax)
Date:   June 29, 2015                          **Attorneys for Defendant Jacqui Hollan**

## MEMORANDUM OF LAW

### I.    Why Plaintiff's Rule 11 Violations Need Early Scrutiny In This Case

Courts often defer ruling on Rule 11 motions for sanctions, but this case presents a compelling reason for a prompt ruling.  Defendant, who lives in California and did nothing to subject herself to the personal jurisdiction of a trial court in Pennsylvania, will be seeking dismissal for lack of personal jurisdiction.

On the other hand, Plaintiff Gordon Ray Parker ("Plaintiff"), what one judge in this district court called a serial litigant plaintiff,[5] wrote and filed a *pro se* Complaint that was vexatious, intentionally pestiferous, and devoid of valid content. This is not surprising though because Plaintiff's Complaint was really filed for the purpose of extra-judicial exploitation of his Complaint; and Plaintiff immediately trumpeted the fact of its filing widely on Twitter and Internet websites where Plaintiff was trashing Defendant's reputation. Therefore, Plaintiff's goal in filing the Complaint was not to redress any legal wrongs, but rather, to create a false legitimacy for Plaintiff's online diatribes against Defendant, hoping to feed into the public's perception that cases filed in federal court probably have merit.  The Complaint is therefore an important component in Plaintiff's scheme to wear down Defendant, and ultimately coerce Defendant into communicating with him if she wanted him to stop the harassment.  Putting aside the damages Defendant suffered from mental anguish and in her business, at a minimum, Plaintiff's frivolous lawsuit and vexatious Complaint has caused Defendant to spend significant sums to retain a lawyer to defend her in a lawsuit filed almost 3,000 miles from her home.

---

[5] Plaintiff concedes this. *See* Compl. at ¶ 3. *See also Parker v. Learn the Skill Corp.*, 2006 WL 759693, *4 (E.D. Pa. March 23, 2006) ("Further, we are persuaded that it would be inappropriate to allow this serial litigant plaintiff 'to conduct a fishing expedition to construct a basis for jurisdiction.'").

While Plaintiff's injurious behavior would ordinarily be met with a counterclaim for wrongful use of civil proceedings, or possibly a *Dragonetti* action, if Defendant asserted such a tort claim in this Court, she would sacrifice her chance to have the Complaint dismissed for lack of personal jurisdiction. The solution to Defendant's dilemma arises out of the overlap of vexatious litigation that supports an action in tort, and the same conduct's prohibition under Rule 11. The remedies available for a violation of Rule 11 are far more constricted than what Defendant could obtain if she counterclaimed in tort, but Rule 11 does provide for a recovery of attorney's fees and costs; and most important, a motion seeking relief under Rule 11 would not cause a waiver of the lack of jurisdiction grounds.[6]

Plaintiff knew there was no personal jurisdiction based on the explanations in the rulings of judges in the Eastern District in prior cases were Plaintiff had sued others who had no contacts with Pennsylvania. Accordingly, Defendant is asserting Plaintiff's knowledge that the Court lacks personal jurisdiction as one of the grounds for this Rule 11 Motion (and will also include it as a ground in her Rule 12(b) Motion). Defendant respectfully requests that the Court rule on this Rule 11 Motion early in the proceedings, or alternatively, preserve Defendant's right to seek relief under Rule 11 even if the Complaint is dismissed.[7]

## II.   Plaintiff Has Followed In This Case, His *Modus Operandi* of Filing Digressive And Vexatious *Pro Se* Complaints In Violation Of The Standards In Rule 11

Lawyers are officers of the Court, bound by the Rules of Professional Responsibility, and subject to liability for malpractice. Professionalism, reputation, and self-preservation therefore

---

[6] The Rule 11 route spares Defendant from waiving her lack of personal jurisdiction defense. *See TES Franchising, LLC v. J. Eric Dombach*, No. CIV.A. 10-0017, 2010 WL 5023249, at *3 (E.D. Pa. Dec. 9, 2010).

[7] Under Fed. R. Civ. P. 11(2), Defendant was obliged to give Plaintiff 21 days advance notice of this Rule 11 Motion before filing it, and thus it was served before Defendant filed her Motion to Dismiss the Complaint. By the time this Rule 11 Motion is filed, the Motion to Dismiss will also have been filed.

restrain lawyers from violating the Rules of Civil Procedure, and especially, Rule 11. By contrast, Plaintiff has filed <u>many</u> cases in the Eastern District, acting always *in propria persona*, but he has evinced no similar restraint.  Plaintiff's Complaints often share the common characteristic of flaunting the Rules; and by extension, because Plaintiff's deficiencies are habitual, it may be inferred from the violations of the Rules present in his Complaints that Plaintiff intentionally ignores the obligations imposed by Rule 11; and the signature of Gordon Ray Parker cannot be accepted as a bona fide Rule 11 certification.[8]

Defendant has located many, but not all of the cases that Plaintiff filed *pro se* in this Eastern District, and they include: *Parker v. Social Security Administration* (Chief Judge Petrese B. Tucker)*; Parker v. Kelly Services, Inc. and Independence Blue Cross* (Chief Judge Petrese B. Tucker); *Parker v. Sloan Et Al* (Honorable J. Curtis Joyner); *Parker v. Learn The Skills Corp. Et Al* (Honorable Harvey Bartle, III) (appealed to the 3rd Circuit); *Parker v. Viacom International, Inc. Et Al* (Honorable Eduardo C. Robreno); *Parker v. Learn The Skills Corp. Et Al* (Honorable Sue L. Robinson) (appealed to the 3rd Circuit); *Parker v. Doe:* (Honorable James Mcgirr Kelly); *Parker v.. Yahoo!, Inc. Et A*l (Honorable Mary A. McLaughlin); *Parker v. University Of Penn* (Honorable Anita B. Brody) (appealed to the 3rd Circuit); *Parker v. Comcast High-Speed Internet Et Al* (Honorable Harvey Bartle, III); *Parker v. Trustees Of The University Of Pennsylvania* (Chief Judge Petrese B. Tucker); *Parker v. Google, Inc. Et Al* (Honorable R.

---

[8] As we discuss in greater detail, Parker's numerous other *pro se* complaints were all dismissed. More than once, the dismissals were on grounds repetitive of the rulings by different judges in Parker's earlier cases. From this record, Parker is shown to be a recidivist who is indifferent to wasting resources of the Court, or imposing needless financial burdens on his targets. Parker's complaints were found to have repeatedly violated Rules that include, *inter alia*, lack of personal jurisdiction under Rule 12(b)(2); improper venue under Rule 12(b)(3);  failing to allege a valid claim under Rule 12(b)(6); and violating the "short and plain statement" requirement of  Rule 8(a)(2).

Nonetheless, each of these Eastern District judges has been overly generous and hospitable to Plaintiff, and in light of his *pro se* status, have painstakingly attempted to explain and teach to Plaintiff why each of his Complaints ran afoul of the law. But Plaintiff has consciously and intentionally ignored the cogent advice of the judges of Court (and the similarly generous and gentle rulings of the Third Circuit which likewise has universally ruled against Plaintiff in the many appeals he filed, but provided him clear explanations for the rulings).

Barclay Surrick) (appealed to the 3rd Circuit); and *Parker v. Learn The Skills Corp. Et Al*
(Honorable James Mcgirr Kelly). As noted, each case that reached the Answer stage was
dismissed, and every dismissal Plaintiff appealed to the Third Circuit was affirmed.

      The appellation, "serial litigant plaintiff" is apt, as noted by Judge Bartle in *Parker v.
Learn the Skill Corp. supra* at footnote 5, because Plaintiff has an extensive history of filing
similarly frivolous lawsuits where the courts have not let his cases survive a motion to dismiss.
*Parker v. Viacom Int'l, Inc.*, 605 F. Supp. 2d 659 (E.D. Pa. 2009); *Parker v. Yahoo!*, 2008 WL
4410095 (E.D. Pa. Sept. 25, 2008); *Parker v. Learn Skills Corp.*, 530 F. Supp. 2d 661 (D. Del.
2008); *Parker v. Learn the Skills Corp.*, 2006 WL 759693 (E.D. Pa. Mar. 23, 2006); *Parker v.
Learn the Skills Corp.*, 2004 WL 2384993, at *2 n. 4 (E.D. Pa. Oct. 25, 2004); *Parker v. Google,
Inc.*, 422 F. Supp. 2d 492, 504 (E.D. Pa. 2006) *aff'd*, 242 F. App'x 833 (3d Cir. 2007). Recently,
Parker filed two new *pro se* case. *See Parker v. Social Security Administration*, *et al.*, 2:15-cv-
03453-PBT (E.D. Pa. 2015) and *Parker v. Kelly Services, Inc. and Independence Blue Cross*,
2:15-cv-03337-PBT (E.D. Pa. 2015).

      A fair reading of the cases reveals that Plaintiff believes paying the Clerk the modest
filing fee for his complaints is a bargain because each complaint yields Plaintiff numerous
improper rewards. For example, while Plaintiff need pay only the filing fee, his perceived
enemies must spend thousands of dollars to have his chaotic complaints dismissed. Plaintiff's
mass publication of hyperlinks and references to his lawsuits on websites, Twitter accounts,
Internet discussion boards and chat rooms, on Facebook, and other places online, draws attention
to Plaintiff and generates customers for his publishing and advice businesses.

      Moreover,  Plaintiff's predatory and malicious habit of first suing his innocent victims,
and then disseminating links and references to his suits on websites terrorizes and bullies his

4

potential enemies, by which he can dominate them. Moreover, in a case like the instant one, where Plaintiff has stalked and harassed a young woman, what Plaintiff has done to damage Defendant's reputation and business empowers Plaintiff to use the threat of cyber-stalking, lawsuits, and mass invasions of other young women's privacy to coerce them into submitting to Plaintiff's demands.

Plaintiff has deployed in this case his familiar *modus operandi,* much of which was evident in the other cases he filed in the Eastern District. He writes his *pro se* complaints with a stream of consciousness style that indulgently recounts his personal life story instead of pleading causes of action. In the Complaint Plaintiff filed here, the digressive and grandiose elaboration about his other lawsuits, and battles in the world of fellow pickup artists and chess players, marks a sharp contrast when juxtaposed next to the Complaint's scant attention to anything related to the Defendant; and the Complaint all but relegates Plaintiff's transactions with Defendant to the status of an unimportant footnote to Plaintiff's rambling exegesis on his history with people who are totally immaterial and irrelevant. Plaintiff imposed on Defendant, her lawyers and the Court by requiring them to wade through Plaintiff's novella length prattle about his life story, going back decades before Plaintiff first contacted Defendant in June of 2015. This abusive pleading typifies what is present in every complaint Plaintiff has filed. While Plaintiff may have escaped being sanctioned in the other cases he filed, it probably was because the other victims of his litigation viewed him as a Typhoid Mary they were glad to just be rid of. However, Plaintiff must be curbed, and he should not escape punishment here because he has violated numerous aspects of Rule 11, and to satisfy Plaintiff's illicit pleasures, he caused great harm and expense to an innocent individual.

### III. Plaintiff Violated Rule 11(b)(1) By Filing His Complaint For The Improper Purposes Of Harassing Defendant, Attempting To Extort Defendant Into Having A Relationship, and Enhancing His Self-Acclaimed Status On The Internet As An Expert Pickup Artist

Rule 11(b)(1) is violated when a Complaint is filed "for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Plaintiff has abused his right to sue in federal court by filing an irrelevant screed instead of a proper pleading, and he filed it to achieve improper purposes.  Plaintiff has no *legal* dispute with Defendant. His real goal and purpose in filing the Complaint was to obtain several *extra-judicial* benefits.

### (A) Plaintiff Filed the Complaint to Obtain the Improper, *Extra-Judicial* Benefit of Coupling Defendant to Plaintiff and Abusing the Court's Powers in Order to Force His Way into Her Daily Life.

Plaintiff's Complaint does not plead anything that could yield a judicial remedy in that it was actually designed to coerce Defendant, a model and actress Plaintiff admittedly lusted after, to pay attention to him, and have some sort of relationship with him.[9] Plaintiff admitted that he wanted to continue having a relationship with Defendant after the production of the video, as he wanted to use her as a spokesperson for a hypnosis company Plaintiff was supposedly going to create in the future. Compl. at ¶ 13. Knowing now that Plaintiff will not voluntarily communicate with him, let alone work with him on any future business venture, Plaintiff is abusing this Court by improperly filing a lawsuit to force his way into Plaintiff's life.

Plaintiff's Complaint violates Rule 11(b)(1) as this lawsuit is designed to force Defendant into a relationship with Plaintiff, even if it is solely lawsuit-related. While Defendant could ignore Plaintiff's emails prior to his filing the Complaint, now, Defendant must pay attorneys to respond to any legal motions or pleadings filed by Defendant. Further, if this case is not

---

[9] Throughout Plaintiff's Complaint, he repeatedly referred to Plaintiff as "sexy", "beautiful," "attractive", etc. *See* Compl. at ¶¶ 10, 12.

dismissed, Defendant may be forced to meet Plaintiff in person for depositions, hearings, and/or trial. Defendant would also be entitled to delve into her personal life and business records through discovery, a further violation of Defendant's privacy in addition to the ongoing harassment by Plaintiff. Plaintiff is using the Complaint as a form of fly-paper, to stick Defendant to him unless the Court dismisses the Complaint and sanctions him, preventing Plaintiff from further filing frivolous lawsuits against Defendant in the future.

Additional specific examples of Plaintiff's exploitation, outside of the courtroom arena, of the fact of the filing of the Complaint are discussed in the following subsections.

**(B)** **Plaintiff Filed the Complaint to Obtain the Improper, *Extra-Judicial* Benefit of Using the Complaint as a Platform to Coerce and Extort Defendant into Resuming Communications, and to Start a Relationship with Him After She Cut Him Off and Ignored Him.**

Plaintiff is using the Complaint as a weapon against Defendant's business. Plaintiff leveraged the expense Defendant faced of defending the lawsuit, and is using the existence of the Complaint as a means of pressuring Defendant to submit to his desires, by spreading the Complaint all over the internet. For example, Plaintiff figured out that Defendant depended on Facebook for invitations to audition for acting jobs, as well as referrals of hypnotherapy clients for business related referrals and endorsements. Plaintiff exploited this by posting links and descriptions of the Complaint on Facebook pages (and many other places on the web) that Defendant's Facebook friends would see. Plaintiff did this to coerce Defendant to communicate with him because starting in early June of 2015, after Defendant realized there was something seriously amiss with Plaintiff, she cut off all communication with him. Plaintiff responded to being ignored by offering the possibility of terminating the federal lawsuit in exchange for Defendant's agreement to stop ignoring him.  Hence, in an email dated June 21, 2015 (attached hereto as Exhibit "A" Number 10) Plaintiff wrote to Defendant and said,

So now what?  I still have an e-mail that says a Hollywood movie star is supposed to hypnotize the **** out of me on video for $1,000.00.  Please note that this is not an easily replacable [sic] item, especially at that price.  I've also been made to defend my review, and my good name against that awful hate website.

I'm assuming you have an attorney if you're having success with the customs pages.  At least no one else will be confused going forward.

**I'm fine with litigating but it's not my first choice.  Write back if you have anything to say** or I'll just wait for your paperwork and/or lawyer to show up.

Sincerely,
Gordon Roy Plaintiff, *Pro se*

(Emphasis added)

Unpersuaded by Plaintiff's entreaties that she communicate with him, Defendant

continued to ignore Plaintiff. When Plaintiff realized Defendant was not taking his bait, he sent

Defendant an email dated June 24, 2015 (attached hereto as Exhibit "A" Number 12) in which

Plaintiff complained,

"Feel free to ignore this mail as you have my multiple attempts to reach out.
Your silence has communicated your legal position very clearly."

Yet, despite acknowledging Defendant's resolve to not have anything to do with him, in that

same June 24th email, Plaintiff threatened additional lawsuits he planned to file against

Defendant in Australia and the United Kingdom, as well as causing Defendant to have to endure

other penalties if Defendant continued to ignore Plaintiff's begging for a response:

**Subject: You have 24 hours to settle this case**
I am about to hire an attorney at a cost of several thousand dollars I'm going to ask a court for if I win (along with the $150 or so it's going to cost to serve you if I don't get the waiver back-- see Rule 4), and I'm going to file in AUS and UK to stop any money you earn there if this lawsuit which began with YOUR threat, and which YOU told me you wanted to settle "without courts and lawyers," only to ignore repeated attempts to do just that.

The level of disrespect and outright hostility has caused me to just let the chips fall where they may.  I went out of my way to offer you a substantial sum of money which you accepted...twice.  You then linked to a website which falsely

8

accused me of pedophilia.  Has your lawyer checked into libel laws
internationally?  America may very well follow suit soon since the immunity
people think exists here is hurting a lot of women now (when that site was created
men were the primary targets so the courts didn't care).

I don't care if you have a lawyer or not.  I don't care what you think of me
personally.  This is strictly business at this point.  We have NO RAPPORT so
hypnosis wouldn't work on me even if you could manage to be professional
enough to make a best-effort video, which I seriously doubt.  That leaves
monetary damages and the libel claim.

In 24 hours I'm going to stop all contact except through legal pleadings, and that
includes your lawyers.  Feel free to ignore this mail as you have my multiple
attempts to reach out.  Your silence has communicated your legal position very
clearly.  Now I have communicated mine, and it will not be changing, period.

Do as thou wilt.

Sincerely,
Gordon Roy Parker

As Defendant continued to ignore Plaintiff, he escalated his threats. In a second email

sent later on June 24, 2015 (attached hereto as Exhibit "A" Number 13), Plaintiff again noted

Defendant was refusing to communicate with him at her own peril, and Plaintiff again confirmed

by his actions that he had filed his Complaint, in violation of Rule 11(b)(1) for the improper,

extra-judicial purpose of extorting communication from Defendant.  Plaintiff  threatened that he

was going to add  a "psychological injury" claim to his Complaint if Defendant did not

communicate with him, and further, Plaintiff added the new threat that that he was reporting

Defendant for what Plaintiff (falsely) alleged was a misrepresentation when Defendant

advertised her status (properly and truthfully) as being a certified hypnotist. Plaintiff thus wrote,

> **Subject: Unlicensed Practice of Medicine ("Board Certified
> Hypnotherapist")**
> I see you have not updated the Ripoff Report rebuttal to note that you are NOT a
> "board certified" anything, in clear violation of California medical practice and
> false-advertising laws.

That I have not sued over the psychological INJURY you have caused doesn't mean I won't be filing paperwork over it.  You can't have it both ways: either you're a stage hypnotist under contract or you are a therapist under medical regulation.

At the very least, please clear the record on Ripoff Report.  It is in the public interest that you not mislead it.
My previous communication stands regarding your previously stated desire to communicate.  I am closing this line of communication except for formal communication tomorrow at noon.

   Defendant continued to ignore Plaintiff, but despite obvious determination to be left alone by Plaintiff, on June 25, 2015 he sent Defendant another email (attached hereto as Exhibit "A" Number 14) that continued to evince Plaintiff's violation of Rule 11(b)(1).  Despite Plaintiff's prior publications on blogs and all over the Internet the previous day that accused Defendant of not being a certified hypnotist, in the June 25th email, Plaintiff acknowledged Defendant was indeed certified (but Plaintiff did not correct the multitude of websites he visited which to date, still have his accusations that Defendant was not a certified hypnotist).  Plaintiff's email also contained the startling statement that Plaintiff himself was a professional hypnotist, saying: "You've been certified for three months, I've been doing hypnosis since six years before you were born."  And, based on his assertion, Plaintiff proposed bizarrely that he and Defendant could settle his lawsuit if she would agree to have a *hypnosis contest* with him, like boxers in a ring; and Plaintiff tried to bedazzle Defendant by pointing out that his proposed hypnosis contest would make money for both of them.  Assuming the honey might not work, Plaintiff also added pepper, when his email threated Defendant's status as a member of the Screen Actors Guild ("SAG") if she still refused to communicate with him. The June 25th email, marked as Exhibit "A" Number 14, stated:

**Subject: No-Limit Hypnosis?  Winner Take All?**
Boxers settle things in the ring. Why not hypnotists?
Two go in, one goes under and out.  It won't be me.

10

Are you CHICKEN?

TRANCE grossed $29 million btw.  I wrote "Park Avenue Danielle" two years earlier.  You could have played Danielle or Mindy.  As a SAG actress, you are bound by SAG rules no matter where you do business, and I was quite aware of that, even relying on it.  I never cross union lines on pay, which is why you were offered $1,000.00.

You have the alternatives, and please this is CIVIL litigation.  Any outcome will be respected and abided by on my end, and I presume yours.  You've been certified for three months, I've been doing hypnosis since six years before you were born.  There's a reason I learned it as a child and you did not.  A big measure of hypnotic talent is the age at which one figures out their power with it.  I grew up in NYC with a yoga teacher in fourth grade.

When I put my new review of you up I stuck only to facts, links, and state regulations.  I have a twenty-year history of speaking out against this, since 1996.  You now know my side that ED didn't tell you before you linked, but you didn't exactly ask me either.

A SAG breach to a SAG signatory is grounds for kicking someone out of the union, but I am not and I was going to just leave the review and forget you, which is why I told you not to contact me after you had HYPNOTIZED me.

It is illegal to broadcast hypnosis to a mass audience on TV or radio.  Obviously, this needs to extend to the internet.  If you don't upload that video, my brain never fixates on your talent, period.  I am not a stalker; I am the opposite of a stalker.  When hypnotized, it takes time to get something out of my brain but I rarely can be injured twice by the same hypnotist and a better, younger, and prettier one WILL come along.  Women age like milk.

So do you want the federal court or the people's court?  Someone's going to get paid here, no reason it can't be us.  The dispute is legitimate; it's not our fault we're celebs.

Ray

Plaintiff's emails to Defendant poured in even though she refused to even acknowledge any of them. They demonstrate that Plaintiff filed his Complaint not for a proper purpose, but rather, he wanted a relationship with Defendant.

11

(C)    **Plaintiff Filed the Complaint to Obtain the Improper, *Extra-Judicial* Benefit of Using the Fact of His Filing of the Complaint to Enhance His Credibility When He Published Derogatory Comments about Defendant on Websites All over the Internet and Twitter Because the Filing Could be Authenticated, and People Believe Federal Lawsuits are Reserved for Serious Claims**

One of the *extra-judicial* benefits Plaintiff obtained is that the Complaint added pseudo legitimacy to Plaintiff's Internet bashings of Defendant by linking his disparaging comments to the Complaint as published on the many Internet sites that record proceedings in the federal courts, or by quoting from the Complaint.[10]

Plaintiff's linking to an officially filed, federal court lawsuit created an aura that his case had the official imprimatur of the Court. This in turn transformed Plaintiff's scandalous and outrageous rantings into something that was perceived as plausible. The plausibility of his allegations and charges was necessary to Plaintiff because some consumer websites, such as Yelp.com are reluctant to remove the most outrageous criticism of a merchant who is evaluated on Yelp if the reviewer of the business can show he is suing it. As a result, although Plaintiff never actually bought any hypnosis video from Defendant, the existence of his lawsuit did not immediately motivate Yelp.com to keep Plaintiff's negative review of Defendant published, even when Defendant provided irrefutable proof that Plaintiff was not a customer, and therefore had

---

[10] Given the ever proliferating postings by Parker where he boasted about, cited, or quoted from the Complaint he filed, it was not productive to search and find all of them. However, a the following list that references the Exhibits (attached to this Motion as Exhibit "A" Numbers 1-15) offers a representative tip of the iceberg of how Parker flooded the Internet and Twitter with negative postings about Defendant coupled with links to the Complaint, or quotes from it:

Exhibit 4 – June 14, 2015 blog post where he commented on Defendant's friend's video saying he sued Defendant for $661,000 in federal court;

Exhibit 5 – June 14, 2015 blog post on Defendant's video saying he sued her;

Exhibit 6 – June 15, 2015 blog post describing and linking to lawsuit;

Exhibit 7 – June 16, 2015 blog post referencing and linking to lawsuit;

Exhibit 15 – June 24/25 Blog post referencing and linking to this lawsuit;

Exhibit 1 – June 24, 2015 Parker's *Yelp.com* review of Defendant as a Hypnotist, where Parker describes and links to this lawsuit

Exhibit 2 – June 21, 2015 Parker's entry on the Internet consumer site, *RipoffReport.com* where he describes the Complaint and links to it numerous times to this lawsuit.

12

no standing under the policies of Yelp.com to criticize her services. The economic damage done by Plaintiff's Yelp.com negative review of Defendant was exactly what Plaintiff intended to cause when he filed his Complaint in violation of Rule 11 (b)(1).

**(D)    Plaintiff Filed the Complaint to Obtain the Improper, *Extra-Judicial* Benefit of Promoting His Business as a Paid Guru to Lonely Men Who Hire Him over the Internet to Learn How to Become a Pickup Artist**

Plaintiff fancies himself an expert "Pickup Artist," and has advertised himself widely online as a *Guru* for lonely men who go to his Internet websites for coaching and advice on how to get women to have sex with them. Compl. at ¶ 66 Indeed, Plaintiff brags in the Complaint that he wrote a book on how these men can pick up women at the work place, in bars, etc., and he has been hawking it on the Internet for years.[11]

The few references Plaintiff's Complaint makes to Defendant are loaded with unwelcomed commentary on Plaintiff's carnal thoughts and opinions about Defendant, and how sexually attractive Plaintiff finds Defendant. Plaintiff's Complaint resemble less what would be expected in a pleading governed by Rule 11, and more the crude text messages a "Pickup Artist" who read Plaintiff's book could be expected send to a woman he is pursuing. This is not surprising because Plaintiff's Complaint was designed to be, and was deployed by Plaintiff as an online, *marketing tool* for his Pickup Artist customers to read—so Plaintiff wrote the Complaint, not with a judge in mind as the audience, but rather, his *Pickup Artist-wanabe* customers; and that explains why Plaintiff flooded the websites those lonely men frequented with news about, and hyperlinks to the Complaint.

---

[11] According to the Complaint, at ¶¶ 54, 64, Parker contributes comments and advice abundantly on the Internet sites such as _alt.seduction.fast_ that Parker says are devoted to "**the internet 'pickup artist' (PUA) movement**'". In fact, Parker purports to be an expert pickup artist, and offers advice based on his book, "***Bettor Off Single***", in which he claims he counsels men on how to pick up women. *See* Compl. at ¶ 66.

In short, Plaintiff filed the Complaint for the improper purpose of having an official document he could widely publicizing on the Internet and Twitter that proved he was suing the kind of beautiful model and Hollywood actress Plaintiff and his group of aspiring "*Lotharios*" could only expect to interact with in their fantasies. Furthermore, Plaintiff cared so much about his reputation amongst the lonely men on the Internet who might seek his advice, he made sure that when they Googled the topic of "Pickup Artist". Plaintiff's lawsuit against the movie-actress-Defendant showed up prominently.

Plaintiff's Complaint is intentionally devoid of proper allegations because he filed it, not to obtain a victory in court, but rather, in violation of Rule 11(b)(1), to get customers for his *Pickup Artist* business.

**IV.   Plaintiff violated Rule 11(b)(2) Because His Complaint's Allegations Do Not Describe Any Cognizable Claim Against Defendant And Therefore Are Not Warranted By Existing Law, Or By A Non-Frivolous Argument For <u>Extending, Modifying, Or Reversing Existing Law, Or For Establishing New Law</u>**

**(A)   No Cognizable Breach of Contract Claim was Alleged**

One of the titles for the Counts in the Complaint alludes to a claim for breach of contract. Yet, the Complaint states unambiguously that Plaintiff and Defendant never entered into any contract. Rather, the Complaint pleads that before money changed hands, before Plaintiff even had a discussion about what would be included in the custom made chess-hypnosis video he wanted to hire Defendant to make, Plaintiff "*fired Defendant*" and "*declined the transaction*" *See* Compl. at ¶ 25. There never was a completed contract because Plaintiff aborted the transaction; and he therefore could have suffered no damages. Simply stated, Plaintiff well knew he had no breach of contract claim, and did not even try to describe one. Instead, the breach of

contract claim is what Justice Scalia would call "jiggery-pokery". *See King v.* Burwell, 2015 WL 2473448 (2015).[12]

Pennsylvania law holds, without dispute that a contract is created only when there is mutual assent to the terms of a contract by the parties. *See Shovel Transfer & Storage, Inc. v. Pennsylvania Liquor Control Bd.*, 559 Pa. 56, 62–63, 739 A.2d 133, 136 (1999). Notice to terminate a contract must be clear and unambiguous. *See Accu-Weather, Inc. v. Prospect Commc'ns, Inc.*, 435 Pa. Super. 93, 100, 644 A.2d 1251, 1254 (1994) (citing *Eastern Milk Producers Co-op Ass'n, Inc. v. Lehigh Valley Co-op Farmers,* 568 F. Supp. 1205, 1207 (E.D. Pa. 1983)).

Plaintiff admits in the Complaint that he immediately stopped the transaction from ever becoming a contract by claiming there was a mutual mistake about which web-payment service he should use to pay Defendant. *See* Compl. at ¶ 25. In other words, there was never a meeting of the minds, no party performed, and no party suffered any damages. If anything, Plaintiff's position is ridiculous since he had no complaint about Defendant or the service Defendant was willing to perform.  Rather, Plaintiff puts forth the most laughable contention that although it was never bargained for, or even discussed by the parties, he wanted to send payment through an adult-services website payment program with which Defendant was not affiliated. When Defendant suggested that Plaintiff pay thorough PayPal, he called off the whole deal. If Plaintiff did not like PayPal, he could have sent a check, wired the money, used Western Union, or a number of other methods. The transmission of funds is rarely a material clause in a contract for

_____

[12] *"Jiggery-pokery"* means a manipulative or slyly dishonest act – synonyms include "trickery" or "hocus-pocus". *See* http://www.thedailybeast.com/articles/2015/06/25/what-scalia-s-jiggery-pokery-means0.html.

services, and if it is, the payee is the one who has the right to say how she would have been paid. It is an insult to the Court that Plaintiff could even in jest think his outrageous allegation would survive scrutiny. His excuse for terminating the deal therefore is as much a sham as everything else associated with him and his claim.

Additionally, a breach of contract claim needs damages. Plaintiff's description of a whacky scheme for making money from some implausible, speculative, and fictitious business relationship in the future with Defendant defies explanation. Thus, the Complaint alleges "Plaintiff had an audition with Defendant, which, if successful, would have lead [sic] to commercialization of the work, and future projects." Compl. at ¶ 110. Defendant's supposed breach occurred by failing to pass the "audition," which will allegedly and speculatively cost Plaintiff $325,000 in future expenses to attempt and re-create the video that he assumes Defendant would have generated. Compl. at ¶ 112. The Complaint's entire discussion about a movie actress, model, and certified hypnotist auditioning to go into business with Plaintiff, the guy who holds himself out to lonely men on the Internet as a Pick-Up Artist Guru, refers to an *uncommunicated* fantasy in Plaintiff's mind that borders on being a hallucination.

The Complaint admits Plaintiff never dared discuss his *uncommunicated* fantasy with Defendant, or that Defendant ever was made aware that Plaintiff was day-dreaming that she was auditioning for him. In fact, Plaintiff admits in his Complaint that after he "fired" Defendant, he wrote her saying that she had "flunked an audition [he] wasn't even giving". Compl. at ¶ 25. Plaintiff admits that there is no way Defendant could have known about the "audition" as he "wasn't even giving" it. *Id.* Moreover, Plaintiff has not alleged any facts that could give the most generous reader of his Complaint even a scintilla of a reason to believe Defendant would give such craziness a minute of thought before rejecting it. Indeed, based on Plaintiff's own

pleadings in this and other cases filed in the Eastern District, Plaintiff certainly was not physically or mentally fit to undertake any ambitious business deal. As Plaintiff alleged in his recent suit against Social Security, he is totally disabled, and complains that he cannot live on his government payment of $729.00 per month.[13]

There are additional reasons why it would be implausible to even imagine that Defendant would ever agree to go into business with Plaintiff. According to Plaintiff's own admissions, he is perceived by those who encounter him as a mentally-unstable, loathsome, overbearing loser with an admitted bad attitude (all of which sound true to Defendant based on her own experience with Plaintiff). Compl. at ¶ 49 and *Parker v. Social Security Administration,* Case No. 15 3453 (E.D. Pa. 2015) ("*Parker v. SSI*") at ¶¶ 29-30.  Furthermore, Plaintiff's Complaint in his case against Social Security admits at ¶ 28, "He has bipolar disorder," and in ¶ 30, Plaintiff alleges categorically, and without exception, "Simply put, no one likes Plaintiff and no one will hire him…due to his attitude and mental illness." Similarly, in ¶ 29, Plaintiff admits,

> Examples of how Plaintiff is perceived include his being called names, in public, without shame from the speaker, like a\*\*hole, overbearing, psychotic, sociopathic, bitter, whining, crazy, FrOOTlOOP (on USENET), batsh\*t crazy, and unemployable, the final one told to this very Court in 2003, by the University of Pennsylvania (who employees thousands of secretaries), with Judge Anita Brody agreeing, saying "[Plaintiff's] employability has always been in question," when she ordered the Rule 35 examination in the course of Plaintiff's Title VII lawsuit.

The admissions in *Parker v. SSI* that Plaintiff "has bipolar disorder," and that "no one likes [him] and no one will hire him…due to his attitude," prove the lie to his fantasy prediction that Defendant would break the mold and would "like him," or that Defendant would not perceive Plaintiff as an "a\*\*hole, overbearing, psychotic, sociopathic, bitter, whining, crazy," just as others have perceived him (Id. at ¶ 29). In short, it is implausible that Plaintiff could have

---

[13] *Parker v. Social Security Administration,* Case No. 15 3453 (E.D. Pa. 2015) ("*Parker v. SSI*") at ¶ 1.

had a chance to suffer the damages he speculates about since he would have had no chance to ever go into business with Defendant. Plaintiff's alleged breach of contract claim violates Rule 11 because it is not cognizable under any existing law or supported by any facts.

**(B)     No Cognizable Claim for Defamation was made, and Plaintiff Knew When He Wrote His Complaint that Defendant is Immune from Such Liability**

Under both statutory and judge made law, a person cannot be held liable for posting on the Internet a hyperlink to, or repeating a quote authored by another person that was published on a website, regardless of the content; and the immunity from defamation claims afforded such users of the Internet is absolute.   *See* Section 230 of the Communications Decency Act of 1996, 47 U.S.C. § 230 ("Section 230"); *see also Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 504 (E.D. Pa. 2006) *aff'd*, 242 F. App'x 833 (3d Cir. 2007) ("Congress granted most Internet services immunity from liability for publishing false or defamatory material so long as the information was provided by another party. As a result, Internet publishers are treated differently from corresponding publishers in print, television and radio."); *Barrett v. Rosenthal*, 40 Cal. 4th 33 (2006) (ruling that user of interactive computer services was immune from defamation liability for posting information passed to her by a third-party publisher); *Zeran v. America Online, Inc.*, 129 F.3d 327, 331–33 (4th Cir. 1997) ("Subjecting Internet service providers and users to defamation liability [for third-party published content] would tend to chill online speech.").

Plaintiff pled in his competition that following his "firing" of Defendant from the video project (before it started),  Plaintiff decided to "don his social-justice warrior (SJW) cape," and post negative, harassing, and highly offensive online reviews of Defendant as a hypnotist and person, as well as making "protest posts" on her social-media pages. Compl. at ¶ 29. When Defendant was informed that Plaintiff had trashed her on the website *RipoffReport.com*, Defendant posted a rebuttal that noted that Plaintiff had never been a customer or bought

18

anything from her, and she added to her rebuttal a link to a website called *Encyclopediadramatica.com*, which offered a history of Plaintiff's wars and arguments with other users of the Internet, Plaintiff's sordid reputation, and a discussion of some of Plaintiff's prior lawsuits. Compl. at ¶¶ 36–37. Plaintiff contends that Defendant's hyperlink to *Encyclopediadramatica.com* forms the basis of his Defamation claims against Defendant. *Id.*

Despite the settled law to the contrary, the Complaint's defamation Count seeks to hold Defendant liable for linking to, or re-publishing matter that Plaintiff deems defamatory that appeared on *Encyclopediadramatica.com*.   Even assuming the Complaint's version of the facts is true, Plaintiff's defamation claim cannot survive because Defendant is absolutely immune from liability for any otherwise defamatory statements contained on the Internet that Defendant did not author herself (and as the Complaint pleads, the content Plaintiff deems defamatory on *Encyclopediadramatica.com* was there at least as early as 2011). *See*, Compl. at ¶ 44. Plaintiff does not contend that Defendant authored comments about him years before he first contacted her in 2015. *See* 47 U.S.C. § 230(c)(1).

The gravity of Plaintiff's Rule 11 violation with regard to his doomed defamation claim should not be overlooked because Plaintiff not only was fully aware of Defendant's immunity to his defamation claim based on Plaintiff's prior litigation where he lost several Internet related defamation cases as a result of the courts' application of Section 230,[14] but worse, Plaintiff cited Section 230 multiple times in his own Complaint in the instant case, and even discussed the difference between Australia and United Kingdom laws on Internet published defamation when compared to Section 230.  *See* Compl. at ¶¶ 99–104.

Plaintiff's defamation claim is therefore evidence of his *willful* violation of Rule 11(b)(2).

---

[14] *See*, e.g., *Parker v. Google*, 422 F. Supp. 2d. at 501–02 (concluding that Defendant could not be held liable for tort claims deriving from the online republication of third-party defamatory statements).

**(C)     No Cognizable Claim for Fraudulent Misrepresentation was made, and Asserting it Violates Rule 11 because it is Unsupported by Plaintiff's Factual Allegations**

It is embarrassing to report that Plaintiff had the lack of shame or respect for the Court to even write his fraudulent misrepresentation claim. Plaintiff alleges fraudulent misrepresentation because he was hoping to purchase a video from Defendant through CustomsClub.com, an adult-fetish-website catering to custom-made videos. Compl. at ¶¶ 114–116. Plaintiff killed the deal when Defendant explained that when she first arrived in Hollywood, she needed work, but that Defendant had long since severed her ties with  CustomsClub.com, and had asked it to take down all references to her, but her requests were ignored.   Plaintiff contends that even though the vehicle for payment was never discussed until he offered to pay through the adult-fetish-website with which Defendant had no current affiliation, and even though Defendant was willing to be paid by PayPal or check, Plaintiff viewed this as a breach of contract worthy of his suit.

Amazingly, the Complaint establishes the deceit and red herring nature of the CustomsClub.com payment issue. Plaintiff wanted Defendant to make a video where she would provide non-sexual, hypnotic suggestion to improve Plaintiff's chess game. The video was <u>not</u> about any fetish; the video was <u>not</u> to be in any way pornographic; the video was <u>not</u> even to be an "R" rated video. Instead, the video was to contain Defendant using the same type of mainstream hypnotic suggestion that she could perform in front of her mother. In a non sequitur of dramatic proportions, Plaintiff locates the tort of misrepresentation in his allegation that but-for that stale, and outdated listing of Defendant on  CustomsClub.com Plaintiff would have dealt with Defendant as a regular client, and avoided using CustomsClub.com altogether. Compl. at ¶ 118.

In short, the allegations in Plaintiff's misrepresentation Count are circular, and designed to amount to no cognizable claim. Under Pennsylvania law, a cause of action for fraudulent misrepresentation requires the following: "(1) a misrepresentation, (2) a fraudulent utterance thereof, (3) an intention by the maker that the recipient will thereby be induced to act, (4) justifiable reliance by the recipient upon the misrepresentation and (5) damage to the recipient as the proximate result." *Martin v. Lancaster Battery Co.*, 530 Pa. 11, 19, 606 A.2d 444, 448 (1992) (citing *Scaife Co. v. Rockwell-Standard Corp.*, 446 Pa. 280, 285, 285 A.2d 451, 454 (1971), *cert. denied*, 407 U.S. 920, 92 S.Ct. 2459, 32 L.Ed.2d 806 (1972)). Litigants have a duty to research and investigate alleged claims. *See Martin v. Farmers First Bank*, 151 F.R.D. 44, 48 (E.D. Pa. 1993) ("[P]ersons who seek to use the federal courts have an obligation to 'stop, think, investigate, and research' before commencing an action.").

Here, Plaintiff asserts *yet another* meritless cause of action without apprising himself of whether such a cause of action even applies to the facts of his story. Defendant never represented to Plaintiff that she would make anything but a legitimate hypnotist video to assist him in improving his chess performance per his request. At no point did Defendant imply that she would provide, nor did Plaintiff request, a video that was sexual in nature, yet he claims that Defendant lied and/or intended to mislead him about being an adult fetish model. In fact, Defendant's former profession is wholly irrelevant as to their alleged agreement. Plaintiff's fantasies fall short in both the reality and the factual basis required of an allegation under Rule 11. *See* Rule 11(b)(2); *see also Martin*, 151 F.R.D. at 48. Thus, Plaintiff's claim asserting a fraudulent misrepresentation by Defendant violates Rule 11 because it is unsupported by his factual allegations. *See id.*

21

**(D)      No Cognizable Claim was made because the Court Lacks Personal Jurisdiction over Defendant, and Plaintiff Knew This When He Wrote his Complaint**

Plaintiff brought this action in this forum knowing that Defendant is domiciled in California and no Constitutional basis can be asserted for personal jurisdiction in this Court. Fed. R. Civ. P. 4(e) permits a district court to assert personal jurisdiction over a nonresident only to the extent allowed under state law where the district court sits. *See Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 63 (3d Cir. 1984). The Pennsylvania Long Arm Statute, 42 Pa. C.S. § 5322(b), allows a court to exercise jurisdiction over a person "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." *Id.* Accordingly, a court may not exercise personal jurisdiction over a non-resident defendant unless there "exist minimum contacts between the defendant and the forum state." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291 (1980).

Under Pennsylvania law, personal jurisdiction can be obtained either through general jurisdiction, 42 Pa. C.S. § 5301, or specific jurisdiction, 42 Pa. C.S. § 5322. General jurisdiction arises over a party if the person's domicile or presence was in the state at the time of the service of process, or there was consent to suit. *See Decker v. Dyson*, 165 Fed. Appx. 951, 953 (3d Cir. 2006) (citing 42 Pa. C.S.A. § 5301(a)(1)). Under the Federal Constitution, "[s]pecific jurisdiction is invoked when the cause of action arises from the defendant's forum related activities such that the defendant should reasonably anticipate being hauled into court there." *Id.*

In the context of Internet communications and agreements, ascertaining specific personal jurisdiction in claims arising from Internet commerce "requires courts to determine whether a defendant established minimum contacts through cyberspace." *Zippo Mfg. Co. v. Zippo Dot*

*Com, Inc.,* 952 F. Supp. 1119, 1123–24 (W.D. Pa. 1997). When analyzing Internet commerce

cases, courts should see if "the likelihood that personal jurisdiction can be constitutionally

exercised is directly proportionate to the nature and quality of commercial activity that an entity

conducts over the Internet." *Id.* at 1124. The Third Circuit has held that this sliding scale ranges

from situations "where a defendant uses an interactive commercial website to actively transact

business with residents of the forum state (personal jurisdiction exists)" to a situation where "a

passive website merely provides information that is accessible to users in a forum state (personal

jurisdiction does not exist)." *Ackourey v. Sonellas Custom Tailors*, 573 F. App'x 208, 211–12

(3d Cir. 2014).

 Here, Plaintiff asserts that personal jurisdiction is appropriate over Defendant in

Pennsylvania because "Defendant's threat to sue Plaintiff as the defamation suit would have to

occur in this jurisdiction." Compl. at ¶ 5. This is another example of Plaintiff assuming the Court

will accept his insult to its intelligence without applying consequences designed for such a

situation under Rule 11. It is well established that a mere threat of litigation does not provide a

basis for exercising personal jurisdiction in Pennsylvania over the non-resident Defendant. *See*

*World-Wide Volkswagen,* 444 U.S. at 291. Because Defendant has not filed suit against Plaintiff

in Pennsylvania, personal jurisdiction cannot be conferred over her based on a "minimum

contact" analysis. *See id.*

 In fact, personal jurisdiction cannot be conferred based on any allegations in Plaintiff's

Complaint. *See id.* Plaintiff's Complaint is based on a potential commercial transaction that

never occurred because Plaintiff alleges he "fired Defendant." *See* Compl. at ¶ 25. Plaintiff was

going to purchase a video from an adult content website that sold custom-made videos with

which Defendant is no longer associated. Compl. at ¶ 19. Plaintiff then voluntarily terminated his

23

purchase order when Defendant asked that he pay through PayPal rather than through the third-party unaffiliated website. Compl. at ¶ 24. Thus, no sufficient contacts can be established under Plaintiff's theory. *See World-Wide Volkswagen*, 444 U.S. at 291.

Notably, Plaintiff is not a novice at litigation or being dismissed for deficient jurisdiction. *See Parker v. Learn Skills Corp.*, 530 F. Supp. 2d 661 (D. Del. 2008); *see also Parker v. Learn the Skills Corp.*, 2006 WL 759693 (E.D. Pa. Mar. 23, 2006); *Parker v. Viacom Int'l, Inc.*, 605 F. Supp. 2d 659 (E.D. Pa. 2009). Plaintiff's was not only on notice that this Court has no jurisdiction over Defendant, but because of his prior experiences before this Court he should have been well-versed on its necessity. Yet, Plaintiff brought this action to continue to harass Defendant and waste her time and resources obtaining local counsel to defend these frivolous claims. Thus, Plaintiff violated Rule 11 because he is aware that this Court lacks personal jurisdiction over Defendant, yet brought this action in Pennsylvania to harass and economically harm Defendant. *See* Fed. R. Civ. P. 11(b)(1).

## V.     If The Legal Standards That Govern Rule 11 Are Applied, Plaintiff Must Be Sanctioned

The purpose of Rule 11 is to remedy abusive litigation. *See Rich Art sign Co., Inc. v. Ring*, 122 F.R.D. 472, 474 (E.D. Pa. 1988). Rule 11 grants the Court the ability to impose sanctions against a party who brings a vexatious or frivolous suit that does not contain either a legitimate factual or legal basis. Fed. R. Civ. P. 11(b). Specifically, Rule 11(b) provides, *inter alia*, as follows:

> (b)     By presenting to the court a pleading . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1)     it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2)     the claim, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]

(3)     the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Fed. R. Civ. P. 11(b)(1), (2) and (3).

Rule 11 extends to *pro se* litigants such as Plaintiff. Fed. R. Civ. P. 11, Advisory Committee Notes, 1993 Amendment. An individual's litigious pattern of behavior is a factor when a court determines appropriate Rule 11 sanctions. *See Toll v. Am. Airlines Inc.*, 166 Fed. Appx. 633, 637 (3d. Cir. 2006) (affirming Rule 11 sanctions against a *pro se* litigant with a demonstrated history of bringing meritless lawsuits); *see also Eisenstein v. Ebsworth*, 148 Fed. Appx. 75, 78 (3d Cir. 2002) (affirming Rule 11 sanctions against a *pro se* litigant whose meritless lawsuits had delayed the equitable distribution of a marital estate); *Carlino v. Gloucester City High Sch.*, 44 Fed. Appx. 599, 601 (3d Cir. 2002) (affirming sanctions against a party who filed claims barred by statute and who "flagrant[ly] fail[ed] to conduct any legal research").

Although Rule 11(d) specifically mentions attorney's fees and costs of defending the frivolous pleading, an award of fees and costs "is but one of several methods of achieving the various goals of Rule 11." *See Doering v. Union County Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988). Appropriate Rule 11 sanctions may include nonmonetary remedies. Fed. R. Civ. P. 11(c)(4). A court has broad discretion to choose the nature and amount of sanctions necessary to achieve the deterrent purpose of Rule 11. *See Dipaolo v. Moran*, 407 F.3d 140, 146 (3d Cir. 2005). Numerous courts have utilized their authority under Rule 11 to grant injunctive relief from abusive litigants to regulate the misuse of judicial process. *See In re Martin-Trigona*,

737 F.2d 1254, 1264–74 (2d Cir. 1984); *see also Franklin v. Murphy*, 745 F.2d 1221, 1229–36

(9th Cir. 1984); *Christen v. Ward*, 916 F.2d 1485 (10th Cir. 1990); *Tripoti v. Beamon*, 878 F.2d

351, 353 (10th Cir. 1989); *In re Green*, 669 F.2d 770, 781–85 (D.C. Cir. 1981); *Merrigan v.*

*Affiliated Bankshares of Colorado, Inc.*, 775 F. Supp. 1408 (D. Colo. 1991).

### VI.    __CONCLUSION__

For the foregoing reasons, Defendant respectfully requests that this Court prevent

Plaintiff's continuous abuse of judicial resources and harmful conduct directed towards

Defendant, and she requests sanctions, pursuant to Rule 11, in the form of an award of

reasonable attorney's fees, costs and expenses associated in responding to this instant action, and

an order enjoining Plaintiff from filing any civil action or otherwise seeking relief against either

Defendant and/or Defendant's undersigned counsel without an order from the Court.


Respectfully submitted,

_____
Gary Green, Esquire
Attorney I.D. PA 15730
**SIDKOFF, PINCUS & GREEN, P.C.**
2700 Aramark Tower
1101 Market Street
Philadelphia, PA  19107
(215) 574-0600 (office)/
(215) 574-0310 (fax)

Dated: <u>June 30, 2015</u>                    **Attorneys for Defendant Jacqui Holland**

## RULE 11(c)(2) CERTIFICATION

Pursuant to the safe harbor provisions of Fed. R. Civ. P. 11(c), the instant motion was served on Plaintiff on June 29, 2015. *See* attached as Exhibit "B." Plaintiff has represented orally and in writing to Defendant's counsel that he refuses to remedy the offending Complaint and has instructed Defendant to file the Motion.

Respectfully submitted,

_____
Gary Green, Esquire
Attorney I.D. PA 15730
**SIDKOFF, PINCUS & GREEN, P.C.**
2700 Aramark Tower
1101 Market Street
Philadelphia, PA  19107
(215) 574-0600 (office)
(215) 574-0310 (fax)

Dated: <u>June 30, 2015</u>

**Attorneys for Defendant Jacqui Holland**

## CERTIFICATE OF SERVICE

I, Gary Green, Esquire, hereby certify that I served a true and correct copy of *Defendant's*

*Rule 11 Motion for Sanction* was electronically filed and served today on all counsel of record,

and is available for viewing and downloading on the Court's ECF system.

_____
Gary Green, Esquire
Attorney I.D. PA 15730
**SIDKOFF, PINCUS & GREEN, P.C.**
2700 Aramark Tower
1101 Market Street
Philadelphia, PA  19107
(215) 574-0600 (office)
(215) 574-0310 (fax)

Dated: June 30, 2015                     **Attorneys for Defendant Jacqui Holland**

# EXHIBIT A

# EXHIBIT 1

| Find | tacos, cheap dinner, Max's | Near | Philadelphia, PA | ▾ |

Home   About Me   Write a Review   Find Friends   Messages   Talk   Events

 yelp

# New Age Hypnotist

★★★★☆ 6 reviews   Details

Hypnosis/Hypnotherapy   Edit






**10524 W Pico Blvd**
**Ste 216**
**Los Angeles, CA 90064**
Cheviot Hills
Get Directions
☎ (818) 521-7971
🌐 newagehypnotist.com

## Recommended Reviews

Search reviews

Yelp Sort   Date   Rating   Elites                        English 6

 Your trust is our top concern, so businesses can't pay to alter or remove their reviews. Learn more.   ✕

**John M.**
San Diego, CA
0 friends
3 reviews

★★★★★ 6/4/2015

Jacqueline has brought a sense of self to my life that I never thought possible.

I will tell you that I have grown into the person I want to be because of Jacqueline. I always feel safe with her. Just simply trusting in her and the process, a tremendous weight has been lifted from me mentally and emotionally. Before seeing Jacqueline my world was functioned well, I had an established career, and good friends and family relationships, but I always felt there were some things I didn't understand. Thanks to Jacqueline, I understand now that there are places within ourselves we cannot reach on our own. Jacqueline and hypnosis will help you.

Live as I do, knowing that thanks to Jacqueline, I now have new tools to help me along the way. Thank you so much Jacqueline.

 **Ray G.**
Philadelphia, PA
11 friends
4 reviews

→ Share review
👤 Compliment
✉ Send message
♥ Follow Ray G.

6/24/2015

Due to a threat of litigation over a previous Yelp! review, secondary to what I consider a horrible experience with this hypnotist, I advise the audience to keep an open mind until a court has a say on its merits, except regarding that which they can independently verify. Those who wish to peruse the specifics of my lawsuit against Ms. Holland can find the filed complaint here (case # in filename): toosmarttofail.com/parke...

### ⏱ Today 9:00 am - 7:00 pm Open now

### Hours

| Mon | 9:00 am - 7:00 pm | |
|-----|-------------------|--|
| Tue | 9:00 am - 7:00 pm | |
| Wed | 9:00 am - 7:00 pm | |
| Thu | 9:00 am - 7:00 pm | Open now |
| Fri | 9:00 am - 7:00 pm | |
| Sat | Closed | |
| Sun | 9:00 am - 7:00 pm | |

✎ Edit business info

### More business info

By Appointment Only   Yes

This business is a Yelp advertiser.

 **Bella T.**
First to review

### Browse nearby

Restaurants, Nightlife, Shopping, Show all

6/25/2015

Case 2:15-cv-03304-TON   Document 3   Filed 06/30/15   Page 42 of 77
New Age Hypnotist - Hypnosis/Hypnotherapy - Cheviot Hills - Los Angeles, CA - Reviews - Photos - Yelp

Jacqui Holland in "True Detective," a sexy film role:

facebook.com/JacquiHolla... (True Detective)

Jacqui Holland as a CHILDREN's party host?:

facebook.com/JacquiHolla... (birthday host)

Jacqui is, simply put, an AMAZING inducer of hypnosis, but she only when she wants to be, which puts the client completely at her mercy, especially after she used her sexy-actress voice, cleavage, and demonstration of her ability to completely dominate the mind of another in this targeted marketing video:

youtube.com/watch?v=w8zM...

When a hypnotist has scant recordings, this is a red flag, and I knew this could create the "hypnotic hell" of knowing how great an inducer she is, yet not being given access to my "favorite song."  If hypnosis were regular medicine, I could buy a bottle of it without need for "rapport."  Instead, I risked "hypnotic hell" (until I find a better hypnotist), but I'm a big boy and that's part of the game when hypnosis is played at the no-limit level.  When it comes to hypnosis, Jacqui is already one of the best in the world at inducing, which means she can make people do ANYTHING once deeply enough, despite the Big Lie that MK-ULTRA did not prove this (if all hypnosis is self-hypnosis, we wouldn't need hypnotists; we control the car but they control the road).  Had I turned thirteen in 2015 instead of 1980, and found the most amazing sexy-female-hypnotist video currently available on the net (not Jacqui's), I can only imagine what this would have done to my brain on video, knowing I could hire her personally! Somewhere out there some boys on YouTube are...?

Though she has since deleted her pages in the custom fetish video community, Jacqui Holland works closely with Erika Jordan, owner of Customdreammodels.com, on acting projects, so she still runs in adult-entertainment circles, the very crowd that causes schools to terminate even EX-workers from that industry, advising them against mixing with children for reasons which would be self-evident were a male ex-adult actor/fetish model to start hypnotizing little girls at their birthday parties.

As a general note, remember that hypnotists are not doctors, not "clinical" or "medical," and they are a referred therapy, much like physical therapy, and as unrelated to true psychotherapy.  Many use terms like that, or even "board certified" to trick people into thinking they have greater licensure, and "confidentiality", than they do.  Any of her clients should read the California laws governing hypnotherapy, its advertising, required legal disclosures, and client privacy:

hypnotherapy.com/lawCA.h... (required disclosure law of 2003).  This is from that page:

"Hypnotherapy is a self-regulated profession and does not qualify for State licensing."  (did anyone ever flunk the school she attended?)

camlawblog.com/articles/... (Hypnotherapy laws in california).  This is from that page:

"provided they do not hold themselves out to the public by any title or description of services
incorporating the words "psychological," "psychologist," "psychology,"
"psychometrist," "psychometrics," or "psychometry," or that they do
not state or imply that they are licensed to practice psychology;"

Who trained Jacqui?  When was she certified?  What is her insurance?  These answers would definitely be useful.

Case 2:15-cv-03304-TON   Document 3   Filed 06/30/15   Page 43 of 77

Does she work ONLY with medical referrals (obviously not if she worked with me)?

On the business side, Jacqui accepted two separate $1,000 offers to make a "sexy hypnosis video for chess improvement" (tying winning at chess to sexual desire), which was right up her alley, and probably no one else's. Now I'm "hypnotized" to win at chess, so that a better, more attractive, even more famous actress will make hypnotizing me her top priority, but it would have been easier if Jacqui had just made the video instead of sending me into "hypnotic hell" when she tried to (in my opinion) change the terms by asking me to risk my Paypal account by paying her that way for an "adult" transaction, as if I had done something "wrong" by responding to her ad. Now I have to train 12 hours a day at chess (I'm gunning for the world title) "without anesthesia." Bummer.

Hope your experience is better than mine was. It sucked eggs.

Ray Gordon





**drew s.**
Eagle Rock, Los Angeles, CA
👥 25 friends
📷 2 reviews

⭐⭐⭐⭐⭐   5/31/2015

I have been suffering with residual back pain for years after a surgery so I was a bit skeptical when a friend mentioned that I try hypnotherapy for pain management. Frankly I didn't believe this could work until my session with Jacqui. She's was able to pinpoint my issue almost immediately and find a way to get the root of the problem. I went in with an aching back and walked out just over an hour later completely pain free. I will definitely be back because this works!!





**W S.**
Woodland Hills, CA
👥 0 friends
📷 1 review

⭐⭐⭐⭐⭐   6/11/2015

This was my first session with Jacqui and I found her to be very professional. The setting was very comfortable and put me at ease. I have had an issue with lower back pain and I was looking for some non invasive relief. In the past I have also tried chiropractic care, massage, physical therapy, and acupuncture with limited success.
After this session with Jacqui I found that the pressure and pain in my lower back to be notably less. I am looking forward to her helping me to prevent the pain from recurring. The session was well worth the time and money.





**Bella T.**
Beverly Hills, CA
👥 2 friends
📷 8 reviews

⭐⭐⭐⭐⭐   5/26/2015

⭐ First to Review

Jaquie has helped me in so many ways through hypnotherapy. She has performed many past life's on me and it has opened me up a great deal and helped me let go of many issues that my subconscious mind was holding onto that I was unaware of. I highly recommend trying a session with her it will transform the way you look at things and live. Thanks Jacqui xo

6/25/2015                    New Age Hypnotist - Hypnosis/Hypnotherapy - Cheviot Hills - Los Angeles, CA - Reviews - Photos - Yelp





**Andrea R.**
Woodland Hills, CA
0 friends
1 review

⭐⭐⭐⭐⭐          6/4/2015

Jacqueline is an amazing hypnotherapist and her work was right to the point to address the things that keep me up at night. After one session I'm a convert, something was lifted and I feel a sense of hope that I had not felt in a while. Thank you Jacqui, I will be back soon!

Page 1 of 1

1 other review that is not currently recommended ▾

## From the business

### Specialties

Bring harmony to your life! You have to be persistent to establish and maintain healthy, two way communication between yourself and your subconscious. I can help. I specialize in hypnotherapy, cigarette addiction, weight loss, pain management, performance enhancement, past life regression, and life coaching. If you want to make positive changes in your life in a short period of time, come see me.

Hypnosis is defined as an altered state of awareness in which you appear to be asleep. Clinical Hypnosis can be used to treat certain physical or psychological problems. Consult a professional for these services. I am licensed and certified as a Hypnotherapist and NLP Life Coach.

### History

Established in 2014.

As an actress, I was intrigued on ways to improve my acting and techniques. I found that hypnosis and getting in touch with my emotions was helpful to my acting. I went on to learn more about hypnosis and life coaching.

I am naturally drawn to helping people. My passion is coaching and counseling the personal improvement in my clients. Over the past several years, I have been drawn more towards hypnotherapy and life coaching as a means to satisfy my passion! I am now a licensed Hypnotherapist and Life Coach.

I look forward to helping each client achieve their life goals.

### Meet the Business Owner

 **Jacqueline H.**
Business Owner

Jacqueline is a native of Ohio and moved to Los Angeles several years ago to pursue a career in acting. Jacqueline has been a successful actress over the last 10 years. Despite her success, she yearned for something bigger. She has always been a caring and spiritual human being. Jacqueline has an internal need to coach and mentor others to help them achieve their full potential. Several years ago she discovered the power of hypnosis. She was attracted by the healing powers of hypnotic trance.

Jacqueline's fascination with hypnosis led her to renowned hypnotist Joel Silver. The duo went on tour together, performing comedy hypnosis at parties, events, and grad nights. Experience with hypnotherapy, meditation, and energy work has realigned Jacqueline with her "higher self." She has taken her passion and decided to found her own Hypnotherapy and Life Coaching Practice. Her practice specializes in addiction, pain management, performance enhancement, stress relief, healing, and past life reg

**Best of Yelp** Los Angeles – Hypnosis/Hypnotherapy

# EXHIBIT 2

**Ripoff Report** | Complaints Reviews Scams Lawsuits Fr___ reported. File your review. Consumers educating consumers.™

By consumers, for consumers...



Is There a Report About You!?   Watch This 3 Minute Video!

Don't let them get away with it.® Let the truth be known!™



■ Home   ■ Help      ■ Register to File a Report   ■ Login

■ Total Visits since 1998: **8,918,084,639**   ■ Estimated money Consumers saved since 1998: **$1,560,664,811,825**   ■ Reports filed: **1,956,134**

| FILE A REPORT | Update a Report | Latest Reports | Consumer Resources | Consumers Say Thank You | Legal Directory | Repair your reputation the right way Corporate Advocacy | Company Name or Report #   SEARCH |

■ Ripoff Report protects consumers first amendment right to free speech     ■ Review Latest Reports   ■ Advanced Search   ■ Browse Categories

*Advertisers above have met our strict standards for business conduct.*

■ Report: **#1234148**

## Complaint Review: New Age Hypnotist Jacqui Holland

**Ripoff Report LEGAL DIRECTORY**

### Related Reports

Great Fun TLG Billed me after I cancelled Internet

Esumanty Indemnity Company Esumanty Indemnity Company P.O. Box 772265 Miami, FL 33177 Charged deductible of 205.78 and never replaced my phone Miami Nationwide

Freedom Living Corp / Smart Marketing Family / HENRY ESTRADA SCAM DOING CREDIT REPAIR AND DEBT SETTLEMENT PLEASE DO NOT HIRE THIS COMPANY Garden City New York

Shutterstock, Inc. shutterstock.com, Mr. Jon Oringer Shutterstock Auto-Bills without Permission New York Internet, NY

Celira INTERNET SCAM-FOOLED MANY Internet

New Mount Media, Samuel Paul & Matthew Goodman Conned us into making a website for us that they couldn't produce Manchester Nationwide

light in the box mini in the box / conventry LTC, INC I ordered a dash cam online, accepted order and billed credit card. I received small envelope with a cleaning cloth supposingly for the screen with a note please note your order has been split into multiple packages that we will be shipping separately' nothing ever arrived and company has no contact phone numbers or any way of reaching them. reno Nevada

Buzzoole.com in NOT a trustworthy company. SCAM! does not appear Internet

Grapplers Quest . Mr Brian Cimins Grapplers Quest . Mr Brian Cimins owe $7000 to FAB Products. Mr Faiz Ul Azeem Butt Wayne New Jersey

corepillar.com is a SCAM COMPANY DO NOT BUY FROM THEM Los Angeles Internet

### Featured Ripoff Reports

■ **Submitted:** Sun, June 07, 2015 ■ **Updated:** Tue, June 09, 2015

■ **Reported By:** BettorOffSingle — **Philadelphia** Pennsylvania USA

■ **New Age Hypnotist Jacqui Holland**    ■ **Phone:** 818-521-7971
10254 West Pico Boulevard, Suite 216    ■ **Web:** http://www.newagehypnotist.com
Los Angeles, California    ■ **Category:** Alternative Health
USA



## New Age Hypnotist Jacqui Holland Fetish Models Should Not Do Hypnotherapy Los Angeles California

***Author of original report: Update**

***Author of original report: Lawsuit Has Been Filed: E.D.Pa #15-cv-3304 (Parker v. Goldhagen)**

***Author of original report: I Am Asking A Court To Review This Review**

***REBUTTAL Owner of company: To be fair**

***REBUTTAL Owner of company: Internet Troll**

Like 0   g+1   Recommend this on Google   Tweet 0

### REBUTTAL BOX™ | Respond to this Report!

| Add Rebuttal to this Report | Aribitrate & Set Record Straight |
| File New Report | Repair Your Reputation |

Hypnosis is a known sexual fetish, which is why attractive female hypnotists can write their own ticket. Jacqui initially wrote hers by performing at high-level private parties and events, a very lucative gig that can open doors. Any



**Bill O'Reilly Fox News Inaccurate Statements about Ripoff Report**

*UPDATE January 1, 2015 INVESTIGATION UPDATE Sac County DA Ben Smith Fails to identify false statements, fails to support accusations w/ clarifications vague sloppy misleading. Prosecutorial Misconduct*



**July 13, 2014: Ripoff Report LAUNCHES FULL INVESTIGATION!**

Sac County Iowa Prosecutor's Allegations Warrant Unprecedented Action from RipoffReport.com

Ben Smith Sac County Iowa Attorney prosecutorial misconduct, improper relationship with star witnesses, allowing witnesses to knowingly lie. Tracey Richter Roberts falsely convicted, overwhelming evidence leads to estranged husband Michael Roberts, Rexxfield failed polygraph, witness intimidation, evidence tampering. Iowa Division of Criminal Investigation corruption.



**Free Tracy Richter**

A Son's Plea: "We are humbly asking for your help in our quest for justice for my mother, Tracey Richter. She was falsely convicted of murder in 2011 for defending her family in a house invasion that occured in 2001."

**The New "Digital Extortion"**
Is there a Ripoff Report on you?



**Reputation Management SEO WARNING!**
They might contact you next!

BBB: What consumers need to know



20/20 exposes the real BBB



woman intelligent enough to hypnotize people on stage is more than intelligent enough to know she's turning on almost every male who falls under her spell. Beauty itself is hypnotic, and adds to the trance, even if the ostensnible purpose is therapeutic. As a general rule, it is wise to keep the lines between stage hypnosis, fetish hypnosis, and therapeutic hypnosis well-drawn; this is why I never became a hypnotherapist.

After finding a very powerful induction (and very sexy, replete with phone-sex voice and dominant overtones), from Jacqui on YouTube, I tried to see if she had any videos for sale on the clips site. [continued below]....

**⟵ Is this Ripoff Report About you?**

**Ripoff Report**
A business' first line of defense **on the Internet.**

If your business is willing to make a commitment to customer satisfaction **Click here now..**

Does your business have a bad reputation? Fix it the right way.
**Corporate Advocacy Program™**

**SEO Reputation Management at its best!**

**Report Attachments:**



..... It is there that I found this highly trained SAG actress (all of which make for vastly superior hypnotists) had a page on "Customs Club," a website for custom fetish hypnosis videos. I offered Jacqui $1,000 to perform a sexy induction with deep mind control, for the purpose of helping my chess (by tying the motivation to win to getting a beautiful woman, and through the rejuvenative effects of the hypnosis itself). She accepted my offer, but I had sent a duplicate and asked her to clear that up by e-mail. Jacqui's response to my e-mail was a request for me to pay her by Paypal, which would have risked my account, as they don't allow adult transactions, and it would have required me to cut out Customs Club, which was not fair to them.

I immediately declined the transaction, and was no longer comfortable dealing with Jacqui, who put me in a bad position since now she is useless to me as a hypnotist, as I didn't trust what she had done, and other hypnotists are useless because they lack her extreme level of talent and training. It's like hypnosis suddenly becomes a drug you know isn't the strongest. Hypnosis's fatal flaw is that other people control its dosage. In this case, I have to use what my brain knows to be inferior hypnosis while patiently waiting for a superior hypnotist to come along, and though it may be a long wait though I'm guessing Jacqui's ultimate gift to me will be the hundreds of copycats who come around later. Someone who claims to understand artists didn't do a good job in my case, and I would rather have never seen her hypnosis at all than to be bait-and-switched in what I consider such a dishonest manner. Is she talented? Extremely. Would I recommend letting her inside your head? Never. I've been doing hypnosis since I was eight. Hypnotists like Jacqui are great if they like you or want something, and can be a psyche-injuring nightmare otherwise. She crossed into a seriously controverisial gray area when she put up that fetish video page as well. A male hypnotherapist with a similar duality would be met with skepticism at best.

Technically speaking, she has a "theoretical seal" based on my perception of her ability that will not be broken until a superior trance is induced. I've been through this before; the longest I had to wait for one to break was nine years. Because a hypnotist is not obligated to work on a subject, there is no penalty for leaving one sealed, but there should be. Anyone who can hypnotize you can seal you, intentionally or unintentionally, and if they do, you are at their mercy. You've seen how she behaved in that position with me. I cannot speak for what she would do with anyone else.

This report was posted on Ripoff Report on 09/07/2015 07:08 PM and is a permanent record located here: http://www.ripoffreport.com/r/New-Age-Hypnotist-Jacqui-Holland/Los-Angeles-California-90064/New-Age-Hypnotist-Jacqui-Holland-Fetish-Models-Should-Not-Do-Hypnotherapy-Los-Angeles-Ca-1234148. The posting time indicated in Arizona local time. Arizona does not observe daylight savings so the post time may be Mountain or Pacific depending on the time of year.

Ripoff Report has an exclusive license to this report. It may not be copied without the written permission of Ripoff Report.

**Click Here to read other Ripoff Reports on New Age Hypnotist Jacqui Holland**

**Past Featured Reports** 

**Ripoff Reports**


Power Ford
Valencia
Samer Kobeissi
Falsified
contract / lied about cost Valencia
California


Freedom Living
Cost / Smart
Marketing
Family /
HENRY
ESTRADA
SCAM DOING
CREDIT REPAIR AND DEBT
SETTLEMENT PLEASE DO NOT
HIRE THIS COMPANY Garden
City New York


New Mount
Media, Samuel
Paul &
Matthew
Goodman
Conned us into
making a
website for us that they couldn't
produce Manchester Nationwide


Buzzous.com
.in NOT a
trustworthy
company.
SCAM! does not appear Internet

Route 69 Auto
Sales BOP,
Inc. dba Route
69 Auto liars,
unprofessional,
thieves,
degrading,
underhanded, con artists,
Prospect Connecticut


Sandi Cmko-
Real Property
Management
President
BEWARE
Dublin Ohio


corepllar
Corepillar.com
is a SCAM
COMPANY DO
NOT BUY
FROM THEM Los Angeles Internet


Platinum
Electricians
IPSWICH
QUEENSLAND
Ken
McCoombs
doday: untrustworthy and shonky
operators Pine Mountain IPSWICH
QUEENSLAND Australia

Home Zone
Furniture On
Saturday
6/20/15 at
11:35 a.m.
Home Zone Euless delivered a
white sectional that was wrapped
in black cloth not in plastic.
However I asked the gentleman
why is this white sectional not in
the plastic his response was that
they took it off at the ware house,
let's be mindful when he set the
sectional was placed down it had
black marks on it I asked why is
this sectional dirty he stated you
can get a towel and whip it off,
Euless TX


Joseph sebring
aka city of
carrolton water
department
incomplete
home
installation,
sloppy work, not knowledgeable in
work being completed, left debris &
materials, curse responses when
advising by text of issues,
unsatisfactory work, carrolton

## Search for additional reports
If you would like to see more Rip-offs on this company/individual, search here:

New Age Hypnotist Jacqui Holland          [ Search ] (?) Search Tips

### Report & Rebuttal

**Respond to this report!**          **Also a victim?**          **Repair Your Reputation?**
[ File a Rebuttal ] (?)          [ File a Report ] (?)          [ Get Started ] (?)

### Arbitrate
Remove Reports?
No! Better yet! Arbitrate to set the record straight!

**Updates & Rebuttals**          REBUTTALS & REPLIES:

                                 💬 3       💬 0       💬 2
                                 Author   Consumer   Employee/Owner

**#1 Author of original report**

## Update

**AUTHOR: - ()**
SUBMITTED: Sunday, June 21, 2015

It appears Jacqui Holland has removed some of the controversial pages related to
the original report, which pertains to the hypnotist with whom I was dealing in early
June, 2015. As Jacqui is evolving from a cutting-edge, sexy film star towards a
more mainstream hypnotherapist, who she is can easily change rapidly, and is
more relevant to those now considering her for hypnosis. I spoke of my personal
experience with her at a given point in time.

**Respond to this report!**  [ File a Rebuttal ] (?)

**#2 Author of original report**

## Lawsuit Has Been Filed: E.D.Pa #15-cv-3304 (Parker v. Goldhagen)

**AUTHOR: - ()**
SUBMITTED: Wednesday, June 17, 2015

Ms. Holland (Goldhagen) threatened me with a libel action over the initial report, so
I have elected to give her her day in court to explain why she thinks I should not
have the right to leave it as is. I will abide by the outcome of this case:

http://toosmartofail.com/parker-v-goldhagen-edpa-15-cv-3304.pdf

Regardless of the outcome of the legal action, I cannot say that I am personally
pleased with the outcome of my business dealing with Jacqui, for reasons I have
already stated. I had only been trying to improve my chess in a very
unconventional way for which Jacqui has a unique skillset that is not easily found
elsewhere. I have never questioned her ability to hypnotize people.

**Respond to this report!**  [ File a Rebuttal ] (?)

**#3 Author of original report**

## I Am Asking A Court To Review This Review

**AUTHOR: - ()**
SUBMITTED: Wednesday, June 10, 2015

Texas



University
Place
Apartments
provided a
health
hazardous
environment, multiple
inconveniences with no
accomodations, untrustworthy
staff,poor management, along
with an inconsiderate corporate
office lafayette Louisiana



Tenia Latev
SCAMMER -
Trimontium
Santa Sofia
Mineral
WaterMy Watch
Quote Rhyton
Con-Artists Scammer Fraud
Trimonium Santa Sofia Mineral
WaterMy Watch Quote Rhyton
Switzerland, Liechtenstein, Hong
Kong, Bulgaria International



RESCUECOM
REVIEW,
RESCUECOM
never
outsources
tech support
overseas. RESCUECOM recruited
for press conference by Senator
Charles Schumer to promote math
& science in United States as an
example of a company that hires
U.S. technology professionals.
*UPDATE: Recognized by Ripoff
Report Corporate Advocacy
Program as a safe business
service, RESCUECOM pledges to
always resolve any issues: feel
safe, confident & secure when
doing business with
RESCUECOM, recognized by
Ripoff Report Verified ™ as a safe
business service



FortuneBuilders, Inc. Fortune
Builders Please Trust Your Family!
Seattle Nationwide



Alberto Siordia
Juan Siordia or
friend Enock
bull terrier
breeder of
sickness
Springfield, Missouri Nationwide



Victoria
L'Originale
Dominic Ruined my machine and
tried to steal my customer, not
trust worthy IMO Dania Beach
Florida



jeanne-

marie@elopesavannah.com
jeanne-
marie@elopesavannah.com,
elopesavannah.com*Savannah-
Wedding-Packages/index.html
paid wedding planner that never
did the job and she kept our
money had to pay another and
the wedding site was also under
construction. Savannah Georgia



Big Star
Moving
Completely
Rude and
Unprofessional.
Wasted My
Time, West
Palm Beach Florida

Due to a threat of litigation from Ms. Holland, and the inability to temporarily suspend this report, which I still stand by, absent a ruling to the contrary, I am in the process of filing a lawsuit for declaratory relief from a judge which says my report is okay. Since the court will have the final word, by which I will abide, I ask the audience to do the same and to reserve judgment on Ms. Holland, whose hypnosis induction skills I have never questioned and in fact admire, until such time as the dispute is resolved. Should the ruling be unfavorable to me, I will abandon any position in the review and retract it lieu of a deletion that this site does not allow.

While I believe in what I write, it is never my intention to violate anyone's rights, and this notice reflects that. I am giving Jacqui a chance to have her day in court, literally, to resolve this once and for all. Thank you.

Ray Gordon

**Respond to this report!**  [ File a Rebuttal ] ⓘ

---

#4 REBUTTAL Owner of company

## To be fair

**AUTHOR: Jacqueline - (USA)**

SUBMITTED: Monday, June 08, 2015

I posted a link about Ray Gordon that I found online while researching the man bullying me. He was harassing me and slandering my name repetitively and making my life a living hell. I am a healer and a very spiritual person so I feel like I must say this in good faith. I do not have any evidence that all this information in the link is correct. I do know that the majority seems to check out.

**Respond to this report!**  [ File a Rebuttal ] ⓘ

---

#5 REBUTTAL Owner of company

## Internet Troll

**AUTHOR: Jacqueline - (USA)**

SUBMITTED: Monday, June 08, 2015

The man who wrote this review is an internet troll.
encyclopediadramatica.se/Ray_Gordon

He attacks attractive hypnotists and tries to ruin their careers. I am a legimate board certified hypnoterapist I am not a fetish hypnotist.

**Respond to this report!**  [ File a Rebuttal ] ⓘ

---

**Report & Rebuttal**

| Respond to this report! | Also a victim? | Repair Your Reputation! |
|---|---|---|
| [ File a Rebuttal ] ⓘ | [ File a Report ] ⓘ | [ Get Started ] ⓘ |

**Arbitrate**
**Remove Reports?**
No! Better yet! Arbitrate to set the record straight!

EXHIBIT 3



**BettorOffSingle** commented on a post on Blogger.

Shared publicly  ·  Jun 12, 2015

Jacqui has a page listed for "custom fetish videos" at Customs Club.
If she's not a fetish model, she might want to let them know.  If she IS
one, well.... http://www.customvideosclub.com/customsclub/jacqui-
holland/



Livin' The Hollywood Scream Dream:
My Interview With "Axeman 2"
Actress Jacqui Holland



+1  |  ➤                                     

Hide comments  ∧

 **rickey russell**  Jun 13, 2015
I sent the info along to Jacqui to check on to make sure that
some company wasn't stealing her likeness.

 **BettorOffSingle**  Jun 13, 2015
I sent her a 52-page federal lawsuit :-) (mostly a contract
dispute nothing personal)

EXHIBIT 4

 **BettorOffSingle** commented on a video on YouTube.
shared publicly · Jun 14, 2016

I just sued Erika's good buddy Jacqui Holland for $661,000 in federal
court over an issue relating to the page with her name on it on
Customs4u.



Confession's of a Hollywood Bimbo

+1 | | ➔ | ▾ | Add a comment...

EXHIBIT 5

 **BettorOffSingle** commented on a video on YouTube.

shared publicly · Jan 14, 2015

I just sued Jacqui for $661,000 in federal court.



+1     Add a comment...

EXHIBIT 6



**BettorOffSingle** commented on a video on YouTube.

shared publicly · Jun 15, 2015

Jacqui Holland thinks she's still a "nice person" even though she linked to a website which contained the lie that I had authored an essay about raping and murdering underaged gymnasts. Obviously no one would tolerate that type of personality unless they were just some horny loser who couldn't see past the superficial. This woman is a pathetic creature on the inside. Her conduct was inexcusable. I'm suing her in federal court for $661,000 in fact (Parker v. Goldhagen is the case find it online).



EXHIBIT 7

 **BettorOffSingle** commented on a video on YouTube.
Shared publicly - Jun 1:, 2015

You left out the mention of her "Customs Club" video page (custom videos for clients) at customs4u! I just sued Jacqui for $661,000 in federal court (case is Parker v. Goldhagen, EDPA 15-cv-3304).



Tony Milazzo "Live and Onboard" Podcast Episode #2...

+1    Add a comment...

EXHIBIT 8

---------- Forwarded message ----------
From: **David Dolan** <davidd33348@yahoo.com>
Date: Wednesday, June 17, 2015
Subject: Hi
To: Jacqueline Holland <newagehypnotist@gmail.com>

Hi Miss Jacqueline.

I filled out the form on your website... and I asked if by any chance you offer any hypno domination or if not, if you knew anyone that did.

I realize that isn't something that you offer on your website... I was just hoping.

Thank you for responding,
david

# EXHIBIT 9

---------- Forwarded message ----------
From: **perro de agua** <soydebellaisa@outlook.es>
Date: Saturday, June 20, 2015
Subject: greetings
To: "newagehypnotist@gmail.com" <newagehypnotist@gmail.com>

Dear Lady,

I have visited your website and seen some of your videos. I started looking for a FemDom Hypnothist and that´s how I came to you.

My experiencie is quit particular. What I´m looking for is a Lady who could hypnotize me to make me be only sexually arroused by thinking of eating her shit. I want to be trained as a human toilet by a Lady. I would accept total mind control.

I would love to be trained by you as your personal toilet slave.

Would you please help me?

Thank you

Alejandro

EXHIBIT 10

Begin forwarded message:

**From:** BettorOffSingle@aol.com
**Date:** June 21, 2015 at 12:41:20 PM PDT
**To:** jackon@aol.com
**Subject: Okay so your customs pages are down**

I would imagine you have some type of case against them if what you say is true or maybe you just wanted to move on without litigating, the way I did when I left the review.

So now what?  I still have an e-mail that says a Hollywood movie star is supposed to hypnotize the **** out of me on video for $1,000.00.  Please note that this is not an easily replacable item, especially at that price.  I've also been made to defend my review, and my good name against that awful hate website.

I'm assuming you have an attorney if you're having success with the customs pages.  At least no one else will be confused going forward.

I'm fine with litigating but it's not my first choice.  Write back if you have anything to say or I'll just wait for your paperwork and/or lawyer to show up.


Sincerely,
Gordon Roy Parker, Pro Se

# EXHIBIT 11

Begin forwarded message:

**From:** BettorOffSingle@aol.com
**Date:** June 21, 2015 at 1:07:23 PM PDT
**To:** jackon@aol.com
**Subject: Fwd: Your update has been approved**

I did what I could.

_____

From: support@RipoffReport.com
To: bettoroffsingle@aol.com
Sent: 6/21/2015 4:04:54 P.M. Eastern Daylight Time
Subj: Your update has been approved

Dear bettoroffsingle@aol.com,

Your update has been approved you can view at the URL below:

Here

Ripoff Report is the internet's oldest running and leading consumer advocacy website and your report will
be available to millions of people in a very short time. If you have opted for it, you will receive notices via
email when comments are posted. Our hope is that by filing this report you can help us publicly reveal
ripoffs, fraudsters, criminals and people that the general public should look out for. Watch for follow up
posts to your report and be certain to respond accordingly by always telling the truth.

We wish you the best of luck. We regret any harm that's come to you and it's our hope that you get the
justice you deserve!

Sincerely,


Ripoff Report

www.ripoffreport.com

# EXHIBIT 12

Begin forwarded message:

**From:** BettorOffSingle@aol.com
**Date:** June 24, 2015 at 10:11:18 AM PDT
**To:** jackon@aol.com
**Subject: You have 24 hours to settle this case**

I am about to hire an attorney at a cost of several thousand dollars I'm going to ask a court for if I win (along with the $150 or so it's going to cost to serve you if I don't get the waiver back-- see Rule 4), and I'm going to file in AUS and UK to stop any money you earn there if this lawsuit which began with YOUR threat, and which YOU told me you wanted to settle "without courts and lawyers," only to ignore repeated attempts to do just that.

The level of disrespect and outright hostility has caused me to just let the chips fall where they may. I went out of my way to offer you a substantial sum of money which you accepted...twice. You then linked to a website which falsely accused me of pedophilia. Has your lawyer checked into libel laws internationally? America may very well follow suit soon since the immunity people think exists here is hurting a lot of women now (when that site was created men were the primary targets so the courts didn't care).

I don't care if you have a lawyer or not. I don't care what you think of me personally. This is strictly business at this point. We have NO RAPPORT so hypnosis wouldn't work on me even if you could manage to be professional enough to make a best-effort video, which I seriously doubt. That leaves monetary damages and the libel claim.

In 24 hours I'm going to stop all contact except through legal pleadings, and that includes your lawyers. Feel free to ignore this mail as you have my multiple attempts to reach out. Your silence has communicated your legal position very clearly. Now I have communicated mine, and it will not be changing, period.

Do as thou wilt.

Sincerely,
Gordon Roy Parker

# EXHIBIT 13

Begin forwarded message:

**From:** BettorOffSingle@aol.com
**Date:** June 24, 2015 at 5:38:14 PM PDT
**To:** jackon@aol.com
**Subject: Unlicensed Practice of Medicine ("Board Certified Hypnotherapist")**

http://www.camlawblog.com/articles/licensure-and-credentialing/hypnotherapy-laws-in-california/

I see you have not updated the Ripoff Report rebuttal to note that you are NOT a "board certified" anything, in clear violation of California medical practice and false-advertising laws.

That I have not sued over the psychological INJURY you have caused doesn't mean I won't be filing paperwork over it.  You can't have it both ways: either you're a stage hypnotist under contract or you are a therapist under medical regulation.

At the very least, please clear the record on Ripoff Report.  It is in the public interest that you not mislead it.

My previous communication stands regarding your previuosly stated desire to communicate.  I am closing this line of communication except for formal communication tomorrow at noon.

EXHIBIT 14

Begin forwarded message:

**From:** BettorOffSingle@aol.com
**Date:** June 25, 2015 at 1:38:28 AM PDT
**To:** jackon@aol.com
**Subject: No-Limit Hypnosis?  Winner Take All?**

Boxers settle things in the ring. Why not hypnotists?

Two go in, one goes under and out.  It won't be me.

Are you CHICKEN?

TRANCE grossed $29 million btw.  I wrote "Park Avenue Danielle" two years earlier.  You could have played Danielle or Mindy.  As a SAG actress, you are bound by SAG rules no matter where you do business, and I was quite aware of that, even relying on it.  I never cross union lines on pay, which is why you were offered $1,000.00.

You have the alternatives, and please this is CIVIL litigation.  Any outcome will be respected and abided by on my end, and I presume yours.  You've been certified for three months, I've been doing hypnosis since six years before you were born.  There's a reason I learned it as a child and you did not.  A big measure of hypnotic talent is the age at which one figures out their power with it.  I grew up in NYC with a yoga teacher in fourth grade.

When I put my new review of you up I stuck only to facts, links, and state regulations.  I have a twenty-year history of speaking out against this, since 1996.  You now know my side that ED didn't tell you before you linked, but you didn't exactly ask me either.

A SAG breach to a SAG signatory is grounds for kicking someone out of the union, but I am not and I was going to just leave the review and forget you, which is why I told you not to contact me after you had HYPNOTIZED me.

It is illegal to broadcast hypnosis to a mass audience on TV or radio.  Obviously, this needs to extend to the internet.  If you don't upload that video, my brain never fixates on your talent, period.  I am not a stalker; I am the opposite of a stalker.  When hypnotized, it takes time to get something out of my brain but I rarely can be injured twice by the same hypnotist and a better, younger, and prettier one WILL come along.  Women age like milk.

So do you want the federal court or the people's court?  Someone's going to get paid here, no reason it can't be us.  The dispute is legitimate; it's not our fault we're celebs.

Ray

# EXHIBIT 15

 **BettorOffSingle** commented on a video on YouTube.
Shared publicly · 10:33 AM

What the hell is an ADULT ACTRESS and FETISH MODEL doing at a
KID'S birthday party? Will the first parent who would let a MALE
ADULT ACTOR host their UNDERAGED DAUGHTER'S birthday party
please step up. This is a woman who had the GALL to link to a
website which falsely claimed that I had authored an essay about
raping and murdering young girls. Look up the lawsuit Parker v.
Holland EDPA 15-cv-3304 for the whole story. Parents, at least be
informed.



# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

GORDON ROY PARKER,                   :          CIVIL ACTION NO. 15-3304
a/k/a "Ray Gordon"                   :
                         Plaintiff    :
            v.                        :
                                      :
JACQUELINE FAY GOLDHAGEN             :
a/k/a Jacqui Holland                 :
                         Defendant   :

## CERTIFICATION OF SERVICE
## OF NOTICE TO FILE A MOTION FOR RULE 11 SANCTIONS

On June 29, 2015 Plaintiff was served with a copy of Defendant's Motion for Sanctions

pursuant to Fed. R. Civ. P. 11. Plaintiff has represented orally and in writing to Defendant's

counsel that he refuses to remedy the offending Complaint and has instructed Defendant to file

the Motion. I certify under penalty of perjury that the foregoing is true and correct. Executed on

June, 30, 2015.

_____
Gary Green, Esquire
Attorney I.D. PA 15730
**SIDKOFF, PINCUS & GREEN, P.C.**
2700 Aramark Tower
1101 Market Street
Philadelphia, PA  19107
(215) 574-0600 (office)
(215) 574-0310 (fax)

Dated: June 30, 2015                   **Attorneys for Defendant Jacqui Holland**