IN THE UNITED STATES COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **GORDON ROY PARKER,**<br>a/k/a "Ray Gordon,"<br>4247 Locust Street, #119<br>Philadelphia, PA 19104<br>(267) 298-1257<br>SnodgrassPublish@aol.com,<br><br>                      Plaintiff<br><br>v.<br><br>**JACQUELINE FAYE GOLDHAGEN,**<br>a/k/a "Jacqui Holland"<br>10524 Pico Boulevard, #216<br>Los Angeles, CA 90064,<br><br>                      Defendant | Case No: 15-cv-3304-TON<br><br><br><br>Complaint for Declaratory Relief,<br>Fraudulent Misrepresentation,<br>Breach of Contract, and<br>Defamation |

## AMENDED COMPLAINT

**Plaintiff** Gordon Roy Parker ("Plaintiff"), in the above-styled action, based upon information and belief, sets forth and avers the following:

### THE PARTIES

1. Plaintiff Gordon Roy Parker, a/k/a "Ray Gordon," is an adult male domiciled and residing in the Commonwealth of Pennsylvania, who may be served at the address listed for him in the caption.

2. Defendant **Jacqueline Faye Goldhagen,** a/k/a **Jacqui Holland** ("Defendant"), is an adult female domiciled and residing in Los Angeles, California. She is a "rising star" actress known for cutting-edge and extremely sexy PG-13 work (e.g., *Bikini Avengers*, *Hollywood Sex*

*Wars*, *Life As A Hot Loser*, etc.), and a hypnotist/life coach with a practice at the address listed for her in the caption.  Her current website is http://www.newagehypnotist.com.

## NATURE OF ACTION

3.  This is an action for declaratory relief, fraudulent misrepresentation, defamation, and breach of contract, stemming from the breakdown of a contract between the parties.

## STATEMENT OF JURISDICTION AND VENUE

4.  Personal jurisdiction over Defendant is conferred by diversity jurisdiction and the amount in controversy.

5.  Subject-matter jurisdiction is conferred by the Declaratory Judgment Act, 28 USC §§2201-02, and b) by the existence of a federal question, 28 USC §1331.  Supplemental jurisdiction on all claims is further conferred.

6.  Venue is proper because of where Plaintiff is domiciled.

## BACKGROUND

7.  Plaintiff incorporates by reference, as if fully stated verbatim herein, the entire contents of all previous paragraphs, and all exhibits to this Complaint.

8.  On June 4, 2015, Plaintiff found a YouTube video of Defendant entitled *New Age Hypnotist*, which contained three or four minutes of her performing hypnosis on a client.

9.  After experiencing "collateral hypnosis," (entering trance while in the audience rather than being the subject), Plaintiff, impressed with Defendant's talent (she was a professional stage hypnotist for three years and is a trained actress), explored the possibility of hiring her as his personal hypnotist, for the express purpose of aiding his chess training.  Plaintiff, once a promising young player, is now disabled and spends most of his days on ICC training at one-minute chess for several hours a day.  His rating is high enough for his games to be showcased

when ICC users ask to *observe a high-rated game*. His peak ranking in his rating pool was 575th out of around 2200, with a top rating of 1904. He is rapidly improving.

10. An internet search for Defendant, whose YouTube video was a bit more "risqué" than the typical hypnosis video, yielded a link to the *Customs Club* website, which offers "custom fetish videos" from female performers, including Defendant, whose page Plaintiff found:



11. To ensure this page was legitimate, Plaintiff checked Defendant's Twitter account, which provided confirmation:



https://twitter.com/jacquiholland/status/586806082959441920
Retrieved June 8, 2015 at 9:14 am.

12. Using the *Make An Offer To Jacqui Holland* link (see ¶10 above), Plaintiff offered Defendant $1,000.00 to make a "sexy hypnosis for chess improvement" video, a hybrid of traditional self-improvement hypnosis (not hypnotherapy) and "sexy hypnosis," a popular internet genre which targets men who, like Plaintiff, enjoy being hypnotized by beautiful women.

13. Plaintiff avers, on information and belief, that Defendant's YouTube hypnosis video was specifically designed to target men with the **hypnofetish**, under pretext of hypnotherapy.

14. Since Plaintiff's first offer did not appear to go through, he sent a second, a few minutes after the first, for the same $1,000.00. This time, however, the offer was blank.

15. A short time later, Defendant accepted *both* of Plaintiff's offers, creating the need for Plaintiff to e-mail Defendant to eliminate any confusion about which offer was valid, at which point Plaintiff would click the payment link provided by *Customs Club*.



16. When asked about the duplicate offers, Defendant replied with a counter-offer:



17. In response, Plaintiff fired Defendant for three reasons: a) as a SAG-AFTRA member, Plaintiff, not a signatory, would have had to become one had he paid her anywhere except through Customs Club, legally her "producer" for SAG-AFTRA purposes; b) PayPal prohibits "adult" transactions, thus putting Plaintiff's PayPal account (and even his regular bank account) at risk, under Operation Chokepoint; c) Plaintiff no longer trusted Defendant to hypnotize him.

18. In his e-mail to Defendant, Plaintiff instructed her never to contact him again.

19. Moments later, Defendant e-mailed Plaintiff *three* times, all of which were deleted by Plaintiff without having been read, in the hope that Defendant would cease contact.

20. Severely traumatized by Defendant's refusal to leave him alone (expert testimony will be required to substantiate this), Plaintiff decided to begin speaking out about his experience with Defendant.

21. On June 7, 2015, Defendant E-mailed Plaintiff, with a copy to her attorney, Steven J. Dedina, Esq., a cease-and-desist order, threatening legal action if Plaintiff did not remove *all* of his postings concerning Defendant and her practice, including the *Yelp* review.



22. Despite threatening legal action, most recently just prior to the filing of the Rule 11 motion for sanctions (*3), Defendant has never specified exactly *which* statements she considers defamatory.

23. Due to *issue preclusion*, any threatened lawsuit would require Plaintiff to raise any and all claims which should be raised, he reviewed the transactional history, concluding he had causes of action for fraudulent misrepresentation and breach of contract. His intention had been to "let it go" and just "say his peace" with his reviews, but he was now being *ordered* to chill his free speech, or face what many would call a SLAPP litigation. A longtime defender of free speech, he chose to speak out further, including posting a ***Ripoff Report*** review similar to his Yelp posting, which had been censored.

24. In response to the Ripoff Report posting, Defendant posted the following rebuttal:



http://www.ripoffreport.com/r/New-Age-Hypnotist-Jacqui-Holland/Los-Angeles-California-90064/New-Age-Hypnotist-Jacqui-Holland-Fetish-Models-Should-Not-Do-Hypnotherapy-Los-Angeles-Ca-1234148

Retrieved on June 9, 2015 at 9:50 pm

25. At the time of publication, Defendant either knew, or should have known, that her statement that Plaintiff "tries to ruin [attractive hypnotists'] careers," was false and misleading. Plaintiff has been producing and reviewing hypnosis content for over a decade, and had absolutely no personal opinion of Defendant until he saw her video.

26. Defendant's claim that she is a ***Board Certified Hypnoterapist [sic]*** is blatantly false and misleading, as Defendant is not a doctor, but an alternative medicine practitioner, in a profession neither licensed nor regulated by California.

27. Defendant's claim that she is not a "fettish hypnotist" [sic] is belied by her offering of custom fetish videos via ***Customs Club***, and her acceptance of *two* separate $1,000.00 offers from Plaintiff proves active, knowing participation on her part. Additionally, Defendant's co-star in multiple projects, Erika Jordan, offers not just videos, but custom video cam sessions via ***Customs Club***. Jacqui also attended the ***Girls And Corpses Zombie Graveside Fetish Ball*** in

2013, while she and partner Joel Silver performed at the *Girls And Corpses Spring 2013 Premiere and Hypnosis Show.*

### Averments Relating To Encyclopedia Dramatica (ED)

28. As its name implies, ED embraces internet conflict and "drama," without regard to defamation or many other legal concerns. Serious legal challenges are met with claims that the site is more parody and hyperbole, not to be taken seriously. In the real world, people -- including employers, friends, family, and other intimates -- *do* take it seriously.

29. Sometime in late 2011, an individual created a ED page devoted to Plaintiff, replete with the unauthorized use of his picture (images are now searchable via Google, ensuring further targeting of Plaintiff), which has been updated regularly ever since, including May, 2015:



https://encyclopediadramatica.se/Ray_Gordon
Retrieved on June 8, 2015

30. The ED website contains numerous false and misleading statements concerning Plaintiff, such as this one:



31. At the time of publication of Defendant's link, the ED page, which claims that the *Jews did WTC*, yet which Defendant considered credible concerning events she never witnessed, about a man she barely knew, links to the Google USENET archive of a posting from *alt.sex.stories*, entitled ***Ray Gordon vs. The Magnificent Seven***, which, the ED site (and, by extension, Defendant's link) claims is "fanfic that revolves around [Plaintiff] ***torturing, raping, and killing young gymnasts.***" A large part of the post is still archived at the URL http://groups.google.com/group/alt.sex.stories/msg/e17add4a3645c68e, and:

> From: Iown...@hotmail.com
> Subject: Ray Gordon vs. The Magnificent Seven
> Date: 1998/09/18
> Message-ID: <36027EBC.3C45@hotmail.com>
> X-Deja-AN: 392390313
> Content-Transfer-Encoding: 8bit
> Content-Type: text/plain; charset=iso-8859-1
> MIME-Version: 1.0
> Reply-To: Iown...@hotmail.com
> NNTP-Posting-Date: Fri, 18 Sep 1998 08:46:14 EST
> Newsgroups: alt.sex.stories
>
> Ray Gordon vs. The Magnificent Seven
>
> My name is Ray Gordon. I'm a mercenary, a soldier of fortune, a hired gun, a bounty hunter, only I don't fight wars or catch crooks. My work is .. shall we say .. a little more specialized. People pay me to stalk, terrorize, torture, rape and sometimes .. yes .. even snuff beautiful young starlet cunts. In other words, I'm a pussy hunter, a cunt commando, if you will. I love my work, and I ask no questions. Someone wants me to stalk, rape and snuff some stuck-up starlet cunt, that's their business. As long as they pay the bills and the veal is fresh, that's all I care about.

32. At the time of publication and her linking, Defendant either knew or should have known that the ***Ray Gordon vs. The Magnificent Seven*** essay was written by Waterstone Entertainment CEO Jeff Kalligheri, recently unmasked as the leader of the ***gymnastics mafia*** referenced in Plaintiff's earlier lawsuits (and Defendant's motion).

33. The stated purposes of the ED page, according to taunts from Plaintiff's "haters," have included inciting vigilantes to harm Plaintiff, and hoping to induce his suicide.

34. Based on the previous averments, Plaintiff sets forth that the ED page portrays him in a completely false light, which either was or should have been obvious to Defendant at the time

she linked to the page, effectively a *WANTED* poster with Plaintiff's picture, given its criminal accusations.

## COUNT ONE:
## DECLARATORY RELIEF

35. Plaintiff incorporates by reference, as if fully stated verbatim herein, the entire contents of all previous paragraphs.

36. Defendant has, so far, declined Plaintiff's invitation to try her threatened defamation allegation. She has not proven or even specified any supposedly defamatory statements.

37. Plaintiff is entitled to a declaration of this Court that nothing he has written until the time of its ruling gives rise to a cause of action against him, by her, for defamation.

38. Plaintiff is further entitled to injunctive relief enjoining Defendant from bringing a defamation action against Plaintiff, in this court, for any conduct prior to the issuance of the injunction, as such an action would be issue-precluded and waived.

## COUNT TWO:
## BREACH OF CONTRACT

39. Plaintiff incorporates by reference, as if fully stated verbatim herein, the entire contents of all previous paragraphs.

40. When Defendant accepted Plaintiff's offer via *Customs Club* (¶15), a binding contract between the parties was created, both under regular contract law, and under SAG-AFTRA rules, to which Defendant was bound.

41. When Defendant e-mailed Plaintiff to refuse payment via *Customs Club* (¶16), the contract was intentionally and hopelessly breached, for the three reasons set forth in ¶17. Hypnosis is not a defective good which can simply be replaced; it requires trust and rapport between hypnotist and client, neither of which the parties could ever rebuild.

42. Defendant's conduct as set forth hereinabove entitles Plaintiff to relief under the Pennsylvania tort of breach of contract; he states this claim for relief on that basis.

43. Plaintiff's specific damage caused by the breach is the loss of the contracted, highly specialized hypnosis video, performed in a "risqué" manner, by a trained Hollywood actress and SAG-AFTRA member who also has several years of experience as a performing hypnotist.

44. Because forcing Defendant to make a video is not an option here, as evidenced by Defendant's recent pleadings, the appropriate remedy is "replacement cost," in this case an amount sufficient for Plaintiff to find a comparable SAG-AFTRA actress to make a comparable hypnosis video, or $325,000.00.

45. Because the breach was intentional, Plaintiff is entitled to punitive damages.

## COUNT THREE:
## FRAUDULENT MISREPRESENTATION

46. Plaintiff incorporates by reference, as if fully stated verbatim herein, the entire contents of all previous paragraphs.

47. Defendant's own words claim she was not an active member of the *Customs Club* website at the time the parties entered into the binding contract set forth hereinabove:



48. Defendant, who has retained one of the most expensive lawfirms in the country to litigate against Plaintiff, only recently managed to secure the deletion of her *Customs Club* pages, though as of this writing she had yet to delete the tweet from April 11.

49. This "accidental" tie to the fetish community is not isolated: in 2013, Defendant, along with hypnotist Joel Silver (her mentor), attended the *Girls And Corpses 2013 Zombie And Fetish Graveside Ball*, at which she was interviewed at length on video. She and Silver had also performed at a 2013 party for the *Girls & Corpses* magazine.

50. Plaintiff avers, upon information and belief, that Defendant has deliberately allowed the "fetish" website to use her likeness, for the express purpose of tapping into the *fetish* market, for its money, while attempting to divert payments to "vanilla" channels like PayPal (against their rules), for the purpose of retaining plausible deniability that she is no longer a "fetish model." Plaintiff further avers that any actual participation by Defendant, in the fetish community, going forward, would be managed by Defendant's partner Erika Jordan, owner of *customdreammodels.com*, and still a member of *Customs Club*. Jordan also offers "skype dates," with the preponderance of the evidence clearly indicating that Defendant uses Jordan as reputational cover.

51. Defendant's conduct, as set forth hereinabove, constitutes a fraudulent misrepresentation; Plaintiff states this claim for relief on that basis.

52. As a direct and proximate result of the fraud, Plaintiff has suffered mental anguish related to Defendant's first enticing him to purchase a video, and then referring to him as "deviant" for being exactly the type of paying customer she fraudulently claimed she had been seeking, in retaliation for his exposing both the fraud and her involvement in the fetish community in his online postings and reviews.

53. Plaintiff is entitled to compensatory damages for the false and misleading advertising, and is further entitled to punitive damages, due to the intentional nature of the fraudulent misrepresentation.

## COUNT FOUR:
## DEFAMATION (AS PUBLISHER)

54. Plaintiff incorporates by reference, as if fully stated verbatim herein, the entire contents of all previous paragraphs.

55. After her first rebuttal to Plaintiff's posting to *Ripoff Report*, Defendant clarified her remarks with a second rebuttal:



56. At the time of publication, Defendant either knew or should have known that the above statements were false, and portray Plaintiff in a false light. He has neither slandered nor harassed Defendant; indeed, it was *Defendant* who repeatedly contacted Plaintiff after being asked not to do so; males have gone to prison for crossing that line even once. One need not be a

fly on the wall to speculate that Defendant has had her share of genuine harassers and stalkers; that is not Plaintiff.

57. By endorsing the ED page, and adding defamatory statements of her own, Defendant became a publisher of the ED page as it relates to her having linked to it in her rebuttal posting to *Ripoff Report*.

58. Defendant's comments in paragraph 24 were not authored by third parties.

59. The defamatory statements were not privileged, nor did Plaintiff consent to their publication or have any editorial control to correct any errors. They were also read by many third parties and will continue to be unless enjoined.

60. Defendant has already admitted to having *no knowledge* of whether or not the statements concerning Plaintiff on the ED page are true, displaying a reckless disregard.

61. Defendant's statements as set forth in this count constitute libel under Pennsylvania law, and Plaintiff states this claim for relief on that basis.

62. In addition to the statements on the internet, Defendant has made defamatory statements concerning Plaintiff beyond the internet, to those in her regular life, and in the course of her work with "the organization" which is funding her side of this litigation.

63. Plaintiff is entitled to compensatory damages for injury to his reputation, loss of enjoyment of life, loss of personal and business reputation, loss of future and retirement income, and pain and suffering.

64. Because Defendant has intentionally imputed criminal conduct upon Plaintiff as set forth hereinabove, Plaintiff is entitled to punitive damages.

65. Plaintiff is entitled to injunctive relief ordering Defendant, if she cannot say anything nice or truthful about Plaintiff, not to say anything at all, and to such other and further relief required to make Plaintiff whole.

## COUNT FIVE:
## DEFAMATION (AS DISTRIBUTOR)

66. Plaintiff incorporates by reference, as if fully stated verbatim herein, the entire contents of all previous paragraphs.

67. This count is alternative to Count Four above, based on distributor liability instead of publisher liability.

68. Because the statements to which Defendant linked were libelous per se, the burden was on her to prove their accuracy prior to republishing them.

69. Defendant's use of Section 230 as a "sword" rather than "shield" defeats the immunity.

70. For her conduct as set forth throughout this complaint, including but not limited to the link to the ED page, Defendant has violated the Pennsylvania tort of libel. Plaintiff states this claim for relief on that basis.

71. Plaintiff is entitled to compensatory damages for injury to his reputation, loss of enjoyment of life, loss of personal and business reputation, loss of future and retirement income, and pain and suffering.

72. Because Defendant has imputed criminal conduct upon Plaintiff as set forth hereinabove, Plaintiff is entitled to punitive damages.

73. Plaintiff is entitled to injunctive relief ordering Defendant, if she cannot say anything nice or truthful about Plaintiff, not to say anything at all, and to such other and further relief required to make Plaintiff whole.

## PRAYER FOR RELIEF

For each count, or for a combination of all counts, Plaintiff seeks the following relief:

1. A declaration that Plaintiff has, to the present, never defamed Defendant, and that any Defamation claims Defendant may have had against Plaintiff have been transactionally waived.

2. Compensatory damages in an amount to be determined at trial, but not less than SIX-HUNDRED SIXTY-ONE THOUSAND DOLLARS ($661,000.00).

3. The maximum punitive damages allowable by law;

4. Costs of suit, including reasonable attorney's fees;

5. Injunctive relief sufficient to terminate the actionable conduct, to make Plaintiff whole, and such other and further relief as this court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiff demands trial by jury in this matter.

This the 1st day of July, 2015

*[signature]*

Gordon Roy Parker, Pro Se
4247 Locust Street, #119
Philadelphia, PA 19104
(267) 298-1257
SnodgrassPublish@aol.com
**PLAINTIFF**

**IN THE UNITED STATES COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **GORDON ROY PARKER,**<br><br>Plaintiff<br><br>v.<br><br>**JACQUELINE FAYE GOLDHAGEN,**<br><br>Defendant | **Case No: 15-cv-3304-TON** |

## CERTIFICATE OF SERVICE

I, Gordon Roy Parker, **Plaintiff** in the above-styled action, hereby certify and swear that I have served the following pleadings on defense counsel, by **hand delivery:** 1) Amended Complaint; 2) Plaintiff's Response To Defendant's Rule 11 Motion; 3) Plaintiff's Motion To Strike Defendant's Rule 11 Motion; 4) Plaintiff's Motion To Disqualify Defense Counsel, and 5) Plaintiff's Motion For Expedited Discovery,

The pleadings were served at:

> Sidkoff, Pincus & Green
> 1101 Market Street, #2700
> Philadelphia, PA 19107
> (215) 574-0600
> Attorney for Defendant

This the 2nd day of July, 2015

*[signature]*

Gordon Roy Parker, Pro Se
4247 Locust Street, #119
Philadelphia, PA 19104
(267) 298-1257
SnodgrassPublish@aol.com
**PLAINTIFF**