# IN THE UNITED STATES COURT
## FOR THE EASTERN DISTRICT OF PENNSYVLANIA

|  |  |  |
|---|---|---|
| **GORDON ROY PARKER,** | : | |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| **JACQUELINE FAYE GOLDHAGEN,** | : | Case No:  15-cv-3304-TON |
| Defendant | : | |
| | : | |
| | : | |

FILED

AUG       2015

MICH...

## PLAINTIFF'S SUR-REPLY IN RESPONSE TO
## DEFENDANT'S RULE 11 REPLY AND ADDITIONAL AVERMENTS

**Plaintiff** Gordon Roy Parker, in the above-styled action, submits this Sur-Reply in response to Defendant's additional averments from its Reply to Plaintiff's Response To Defendant's Rule 11 Motion For Sanctions, effectively amending the instant motion.

### Defendant's Fraud Upon The Court

During dozens of breathers, in between bigoted imputations of mental illness upon Plaintiff to explain his behavior, Defendant has made perfectly clear that:

1.   She is not a ***fettish*** [sic] model.

2.   She never intended to sell fetish/fantasy videos (the terms are interchangeable, as one drives the other) via ***CustomsClub***, because her account on that site was inactive, and she does not make "that type of video."

3.   Any claim by Plaintiff that Defendant intentionally used her adult-entertainment wiles to entice him into the ***CustomsClub*** transaction, so she could then cut them out as

middleman, once his appetite was duly whetted, is conclusive proof that Plaintiff is in the throes of an extreme bipolar episode, rendering him incompetent.

On an investigative hunch, Plaintiff scoured Defendant's "favorite" tweets on Twitter, numbering well over a thousand, but with most from some extremely obsessed fan she seems to accept. Lo and behold, as he worked his way through April, 2015, Plaintiff found this:



https://twitter.com/JammingJohnnyV/status/590912988011483137
Retrieved August 24, 2015 at 10:59 p.m.

As of April 22, 2015, a mere *six weeks* before crossing paths with Plaintiff, Defendant was well on the way to establishing her hypnotherapy practice, and still making "fantasy" videos.

The marketing of the speaks for itself: "producing your *fantasies* since 2003." Just in case there

is any doubt about what these videos entail, this is the order page:



http://www.customdreammodels.com/order-a-video.html
Retrieved August 24, 2015 at 10:56 pm

The page offers *fetish attire*, *hardcore* pornography, and asks *what fantasy can we fulfill?*

On the subject of pornography, Defendant's latest (unrated adult) "film" (*Erotic Vampires Of Beverly Hills)* was released (straight to video, of course) as this very pleading was being drafted. "Mind control fiction" is a known stealth vehicle for injecting the hypnofetish into a film. Co-Star Sarah Hunter's Twitter profile appears below:



https://twitter.com/MsSarahHunter
Retrieved August 27, 2015

### Defense Counsel's E-mail Response To Learning Of Defendant's Fraud

On August 25, 2015, at 2:28 a.m., EDT, the rarely verbose defense counsel, upon receiving e-mail evidence from Plaintiff containing the screenshots from pages 2-4 above, sent the following reply by e-mail to Plaintiff:

The courts have rejected the "public square" argument you seem to think offers you a shield for your harassing and cyberstalking. [Supporting legal arguments moved to Plaintiff's Memorandum Of Law in Support of this pleading].

These were criminal cases where the burden on the prosecution is very heavy, and the First Amendment has its strongest protection since it is a curb on government infringement. In civil cases where only private parties are involved, there is a much weaker First Amendment protection.

I considered just filing away your last email, but you are so ignorant of the law, I thought perhaps if you were referred to the rulings the judges have actually made instead of what you hoped the judges might rule, you might try to find a way to control your obsessive harassing and cyberstalking of my client. You may think this is like an online chess match or some type of test case or perhaps some debate; and if you do, that would be a dangerous fiction. You are intentionally causing real harm to an innocent stranger, and the law provides for consequences. At a minimum, you are now deprived of any defense that you thought what you were doing was protected speech. "You were just put on notice."

*__Ignore this at your peril__*- I do not wish to receive email from you except as is necessary for matters in the litigation; and my client demands you stop following her around on the Internet, that you stop relentlessly altering her Wikipedia page with *__information that is none of your business,__* and that you stop commenting on web pages where she is mentioned. -- Gary Green (Emphasis Added)[1]

Plaintiff will address Defendant's *argumentia* fully in his Memorandum, but for now will say that he has neither harassed, nor stalked, Defendant. Indeed, by linking to the ED page, which called Plaintiff a pedophile, and *doxxed* him (picture, address, etc.), she intentionally put him at risk from vigilantes, particularly of the white-knight, sex-addicted variety.

## II.  RESPONSE TO DEFENDANT'S NEW AVERMENTS AND EXHIBITS

Defendant has introduced new averments and exhibits, effectively amending the instant motion.  Plaintiff supplements his responses accordingly, quoting the unnumbered averments:

1.  *"Defendant's Rule 11 Motion was filed because Plaintiff had no legitimate reason to sue her, and instead, used the lawsuit to trumpet his cyber-stalking and cyber-bullying of a beautiful actress to his fans and others with whom Plaintiff interacts on the internet.*

    **Denied.**  Defendant's Rule 11 Motion, based on averments Defendant knew, and which her counsel either knew, or should have known, were false, most notably that, while disclaiming any involvement in the adult custom-video niche, she was (and likely still is) making

---

[1] According to Wikipedia's *Wikipedia Actors And Filmmakers,* Defendant's article is "marked as *low importance*."

custom videos through her *Life As A Hot Loser* castmate Erika Jordan's

*customdreammodels.com* website, which offers "hardcore fetish" custom fantasy videos which

put even the most "lurid fantasies" imputed upon Plaintiff to shame.

2.  *He alone chose to sue a California citizen in Pennsylvania and force her to spend her life savings in the defense of a lawsuit Plaintiff filed pro se. The transaction described in the Complaint and Amended Complaint does not give rise to any cause of action, but to make matters worse, Plaintiff intentionally camouflaged the lack of merit in his case with statements in the Complaint (and Amended Complaint) that were not only immaterial, but also gratuitously demeaning and insulting to Defendant, and at the same time were falsely suggestive of issues that are simply not justiciable in this lawsuit."* (p.1)

**Denied.** Plaintiff has already briefed this court extensively on jurisdictional issues in

his response to Defendant's Motion To Dismiss. Regarding the transaction, Defendant was not

aware at the time of pleading that Plaintiff had uncovered refutational evidence.

3.  *"Stripped to its core, the facts behind the incident that gave rise to the case, as gleaned from the Complaint and Amended Complaint, are as follows: "*

    a.  *A movie actress embarked on a different career path, and completed the courses needed to obtain a certification for her new occupation of being a hypnotherapist.*

    b.  *Defendant videotaped hypnotherapy sessions with her clients, and some were posted on YouTube.*

    c.  *Plaintiff, after seeing a YouTube video of Defendant hypnotizing a client, searched for a way to contact Defendant on the internet.*

    d.  *Plaintiff's search on the internet yielded a way to contact Defendant on Custom[s] Club, a website on which Defendant had previously been listed before she had embarked on her new career as a hypnotherapist, where actresses and models offered custom-made adult videos.*

    e.  *Plaintiff sent a message to Defendant through Custom[s] Club in which he offered to pay Defendant $1,000 if Defendant would use her hypnotherapy skills to film a custom video for chess game training.*

    f.  *Defendant immediately replied she was no longer affiliated with Customs Club, and could not use its payment system, and suggested Plaintiff could pay her through PayPal.*

    g.  *Plaintiff rejected the PayPal method, and terminated the transaction without ordering the video or Paying Defendant.*

    h.    *Plaintiff then posted negative, disparaging reviews about Defendant on popular Internet consumer sites that created the false impression that he knew or was a customer of Defendant.*

    i.    *Defendant posted a rebuttal on one of the consumer websites [RipoffReport.com] that linked Plaintiff's name to a webpage that discussed Plaintiff's history of being a cyber-stalker and cyber-bully.* (pp.1-2).

[3.] **Denied.** By way of further answer:

    a.    **Denied.** Defendant has 1) never stopped her acting career, 2) as recently as April, 2015, has been making custom fetish/fantasy adult videos for ***CustomDreamModels.com***, and 3) has been a professional hypnotist for several years, with her ***practice*** all that is "new."

    b.    **Stipulated.** Plaintiff is without sufficient information but will stipulate.

    c.    **Admitted**. By way of further answer, never disputed.

    d.    **Denied.** By way of further answer: 1) Defendant knowingly allowed the ***CustomsClub*** ad to run to draw fetish-video traffic, which she would then divert to PayPal; 2) Defendant has remained active all along on ***CustomDreamModels.com***,[2] as the thank-you tweet from one of her video customers from page 2 ("Johnny Vail") indicates.

    e.    **Denied.** Plaintiff offered Defendant $1,000.00 for a "sexy hypnosis" video designed to help him improve at chess by using the hypnotist's sexuality and predatory mind to "program" him to develop his "killer instinct" against opponents. This was made abundantly clear to Defendant, who certainly would not have charged $1,000.00 for a ***therapy*** video. Moreover, this averment was pled days before Plaintiff uncovered his refutational evidence.

    f.    **Denied.** By way of further answer:

---

[2] Defendant was performing stage hypnosis in ***high schools*** (on minors) during the period where, ***under the same name***, she was offering custom fetish videos. Plaintiff has a long history of supporting a ban on all stage hypnosis of minors, and in high schools or below. He became aware of the problem when high-school hypnotists and their subjects would "stumble" into his adult-themed chats on AOL (where the minors would be ***shooed*** by all). Plaintiff's video exhibit of Defendant's Periscope hypnosis session was accessible to all ages.

1)    Defendant, now proven to have been lying about having abandoned the adult custom fetish-video market, is misrepresenting his client's statement, which was:

> Would you be open to just dealing with me and paying through PayPal. I hate that site it's really confusing *I tried to erase it on numerous occasions **but couldn't*** figure out how to do that either  (emphasis added).

2)    Clearly, Defendant's words from 1) above show that she *failed* to terminate her membership with *CustomsClub,* though it was obvious from her acceptance of the offer (and now from the new evidence that she worked for a competing site to *CustomsClub*), that what *My Cousin Vinny* "said" hereinabove was anything but "a bunch of [impeached averments]."  No reasonable consumer in Plaintiff's shoes would have had reason to question the ad.

3)    An *adult entertainer*, which it is now proven that Defendant has been during all times in controversy, who attempts to divert payments to PayPal is an enormous "red flag" that any smart customer would avoid, due to dishonesty, the risk of the customer losing his own PayPal (and regular banking) accounts, and the simple bait-and-switch from a $1,000.00 "fantasy" video to a $1,000.00 "therapy" video no better than dozens of other free videos on YouTube.  Additionally, Plaintiff was being asked to violate SAG-AFTRA rules by paying her directly.

g.    **Denied in part**.  The implied legal conclusion of no contract is **denied**.

h.    **Denied**.  The averment is conclusory; if factual, it is **denied**.  By way of further answer, 1) defense counsel referred to Plaintiff as a *customer* in an e-mail to Plaintiff (previously pled); 2) Plaintiff was a much a *customer* as the ones from *Customdreammodels.com*, and 3) Plaintiff's review was not misleading or disparaging in any way.

i.   **Denied.** By way of further answer, defamatory, and not a "rebuttal" of anything.

The ED page is a "pack of lies," including the dangerous lie, replete with ***doxxing***, that Plaintiff

is a pedophile. The original Complaint explains the entire story behind the ED page.

4.   ***"Despite that the facts afforded Plaintiff no cause of action, and no grounds to Drag Defendant 3,000 miles from where she resides into a Pennsylvania court that has no personal jurisdiction, Defendant filed the original Complaint, and then posted a copy of it immediately on numerous websites where Defendant interacted with friends and family (i.e., Facebook and Twitter).***

**Denied**. By way of further answer: a) this issue has been briefed,[3] and b) Defendant's

Rule 11 motion was posted online within hours of its filing by those sympathetic to her, with

obligatory epithets to Plaintiff. It is common practice on the internet for both sides to announce

internet-based lawsuits, if only for news purposes, or to answer direct queries from a curious

audience who may itself be impacted, as in the case of ***Yelp!*** members.

5.   ***"This was cyberstalking, since Plaintiff had no legitimate reason to follow Defendant around the internet just to torment her with his postings".*** (p.3)

**Denied.**   By way of further answer, this is not a criminal action, nor should it

function as one against any ***pro se***. Plaintiff's conduct is perfectly legal free expression, and

strongly protected by the First Amendment. If anyone is the cyberstalker, it is Defendant, for her

link to the ED page. Alternatively, this very examination of Defendant's own internet history

proved that she lied about her involvement with ***CustomDreamModels.com***.

6.   ***"The apparent real thrill Plaintiff obtained however was when he posted the Complaint and bragged about filing it on the enumerable websites where Plaintiff has established a presence, including those frequented by his "fans" in the [PUA] community -- where Plaintiff fancies himself a "Guru" for socially-challenged, awkward, and self-loathing men who think a mentally ill, bi-polar disabled person like Plaintiff could teach them the knack of how to be successful in picking up strange women for sex. (p.3)***

**Denied.**   The averment is conclusory; if factual, **denied**. By way of further answer:

---

[3] It is obvious that Defendant never intended to carry out her threat to sue Plaintiff in a case which must be heard within this jurisdiction, and equally obvious that she just assumed Plaintiff was some random internet user who would have rolled over in terror rather than file for declaratory relief; had she known, odds are she never would have threatened suit. Defendant is merely a bully who is complaining that her target has resisted her abuse.

    a.    Plaintiff does not actively market his PUA work beyond the occasional social-media mention and existence of free books on his website.  For years, it generated steady, significant income for Plaintiff, thus proving its value.

    b.    Defendant's argument is a completely baseless, ***ad-hominem***, stereotypical attack on dating-advice authors, in this case with irrelevancies more descriptive of Erik "Mystery" von Markovik than Plaintiff, a pioneer in the "PUA community" whose work was plagiarized by those who would simultaneously disparage him (like Mystery), as outlined profusely in the original Complaint and his previous lawsuits) belies Defendant's malicious, irrelevant mischaracterizations.  Plaintiff's substantial income and audience size belie Defendant's wishful-thinking attacks.

    c.    Defendant's characterization is further belied by Plaintiff being tall, athletic (in his youth), good-looking (offered the lead in ***Lucifer Rising II*** by Kenneth Anger in 1984), well-off (luxury hi-rise on the UES), and having learned about women at an early age from his fiftysomething father (twenty years older than his "perfect ten" mother), and his "PUA cousin," Diane Lane's boyfriend for three years.  Plaintiff, who is prep-school educated, with a 4.0 GPA for a year at SUNY, is anything but socially-awkward.  He built on his privilege by developing himself into a fascinating, "international chessplayer," with genuine promise, getting "super-elite" women to whom dime-a-dozen, "financially secure" white-collar men are invisible. Defense counsel's attacks on Plaintiffs are rooted in the mistaken belief that men are defined by their resume.

    d.    This is a customer testimonial from Plaintiff's ***Bettor Off Single*** website:[4]

---

[4] **http://www.toosmarttofail.com/bos.html**. This portion of the testimonial was written "off the cuff," and not intended for use as such.  His actual testimonial praises Plaintiff profusely, including the following:

Recently, Ray's top PUA student responded to an e-mail asking if he intended to use the remaining nine months of coaching for which he had prepaid. This was his response:

"Women-wise not a lot of targets here lately. At least not of my standards which have gotten pretty damn high. Still, so far in the last 8 months it's averaged out at something like a woman a month. But it could have been a woman a week easily, if I'd had lowered my standards a bit and decided to go all player on the chicks (something I'm not too fond of, some of my friends do that all the time but for me it's pretty meaningless - lowering my standards is something very hard for me to do.)

"All above 8s. Including another very hot Brazillian (gotta love those, reading the report in BOS about the Brazillian was quite ironic) as well as a Chinese dancer. Currently I'm working on another Italian and a Chinese but it's a bit dead this semester. Like I said, at least by my standards. September is when higher quality arrives but we'll see.

"As for the coaching, thanks, not many problems at the moment, or sticking points. ***You did your job, and you did it damn well, I might add.*** (Emphasis original).

e.    Just as she lied about her ties to the adult fetish-video industry, Defendant (and

Erika Jordan) have direct ties to Plaintiff's business rivals in the PUA industry, the same ones

who originally published much of the content on the ED page to which Defendant linked.  Erika

Jordan has done a "what do women want?" video for ***Real Social Dynamics***, targeted last year

by the #takedownjulienblanc movement.

7.    ***"The ill-considered Complaint was filed, in part, to fabricate the appearance of a real dispute between Plaintiff and Defendant to impress Plaintiff's fans in the online [PUA] community.  The filing of the complaint was touted by Plaintiff as proof that he and Defendant, a movie and television actress, had sufficient enough relationship to lead to a federal lawsuit."***

---

"Granted, it's not easy, but thanks to Ray, it becomes as simple as possible. Like a veteran coach, Ray will teach you everything he's learnt about women and life. He spares nothing and takes no prisoners with his nitty-gritty, coach-player, no bullshit approach. Far from conventional knowledge. Kids, you won't learn this in a classroom or in books, that's for sure. Ray tells it like it is. "

"As for BettorOffSingle (NO, it's NOT a miss-spelling) that book really is something. ***I've never failed to realize its brilliance.*** The lessons, the style of writing, the popular-culture references, etc. That book encompasses the knowledge and experience learnt in half a century. Go ahead and learn that line again. And again. And again."

**Denied.** The aversion is conclusory; if factual, it is **denied.** It is just the latest salvo in a twenty-year harassment campaign initiated by Jeff Kalligheri and the *Gymnastics Mafia* in 1997, and continued by Defendant linking to the ED Page.  By way of further answer:

   a.     When threatening Plaintiff by e-mail over merely mentioning her name anywhere online (p.5), Defendant was a "private individual," but now he's presenting her as a high-status public-figure "movie and [D-list] television actress."

   b.     Defendant's allegation is absurd on its face, for she has clearly been the aggressor since the moment she threatened to file suit, and linked to the ED page.

   c.     Defendant's recently uncovered lie regarding custom adult videos all but proves Plaintiff's fraud and breach-of-contract claims.

   d.     Defendant's threatened lawsuit is a genuine controversy, not a pretext.

   e.     The defamation claims are legitimate attempts to overturn 47 USC §230, and to hold Defendant accountable for the statements for which she is the original publisher.

8.     *"In response to Defendant's motion to enforce Rule 11 against Plaintiff's violations, we find Plaintiff assuming the role of First Amendment Freedom Rider.  The First Amendment part is Plaintiff's argument in response to the Rule 11 motion that his cyberstalking of Defendant and his falsely worded consumer reviews that ruined Defendant's nascent hypnotherapy business were all but required of him by the First Amendment -- and further that the notion of Freedom of Speech condoned his malicious filing of a lawsuit to ad[d] gravitas to his campaign of cyber-bullying and cyber-stalking.  Plaintiff argues that he is the real victim because rather than lay down and let Defendant [sic] ruin both her life and new hypnosis occupation, defendant retained a lawyer who exposed Plaintiff for the faker and dangerous person he is."* (p.4)

   **Denied.**  The averment is conclusory; if factual, **denied.**  By way of further answer:

   a.     How ironic that Defendant, proven to have lied about both her age and *CustomDreamModels.com,* would call Plaintiff a "faker." He is no danger to anyone, and it is obvious that his reviews were spot-on.

b.    Defendant is not new to hypnotherapy or hypnosis; only her practice is new.

c.    The Freedom Riders should have been mere bus passengers:



d.    Presuming defense counsel meant *Plaintiff* as the one who ruined Defendant's

life and business, he did not, any more than Defendant "ruined" his chess career.  She should

look more to her own conduct, questionable "certification," claims of using energy to heal her

dog, and claims that her hypnosis can help her clients make more money, as a start.

9.    *Plaintiff admitted in [Parker v. SSA] that he is afflicted with mental illness, and
suffers from bipolar disorder that is severe enough to qualify him for full Social
Security disability.  In ¶30, Parker alleges categorically, and without exception,
"Simply put, no one likes Plaintiff and no one will hire him...due to his attitude and
mental illness."  Nonetheless, the federal court system is not a place where mentally
ill patients can obtain therapy at the expense of innocent bystanders.  At this stage
of the case, the Court is armed with the power under Rule 11 to avoid further harm
to Defendant by Plaintiff's gaming of the federal court system.  Indeed, Plaintiff's
malice and improper motives for filing the lawsuit were re-established by a recent e-
mail to Defendant's counsel where he threatened to repeat his flooding of the
internet with disparaging statements about Defendant.[5]  See July 18, 2015 E-mail,
Exhibit "B."* (pp. 4-5)

**Denied.**  The averment is conclusory; to the extent it is factual (beyond the contents of

the now-amended complaint, it is **denied.**  Plaintiff was obviously speaking in the voice of his

oppressors.  This extremely abusive, prejudicial, and irrelevant averment is *prima facie* evidence

---

[5] As a show of good faith, Plaintiff extended his eight days of silence concerning Defendant to *fifty*, during which
time her "internet allies" carried on the fight.

of abuse of process at the least, and criminal extortion at worst, an attempt to uncover what

Plaintiff recently discovered about ***CustomDreamModels.com***.  This Court is now witnessing

firsthand, exactly what Plaintiff has had to deal with online -- defamation, harassment, verbal

abuse -- presented in a malicious federal pleading.

10. ***Rather than restrain himself and withhold further Internet postings <u>about</u> Defendant, Plaintiff e-mailed Defendant's Counsel to argue that he will once again become a First Amendment Freedom Rider, and will continue to alert the world that "she's a self-admitted fetish model who continues to market to the fetish, and even hypnotizes random people over internet camera without any diligence."*** (p.5)

   **Denied.**  By way of further answer, Defendant favorited a fetish-model tweet herself.

11. ***After Plaintiff attempted to slash and burn Defendant's business to the ground by posting slanderous and harassing material on Defendant's Yelp! page, Defendant renamed herself and her business.  However, Plaintiff is once again trying to harm Defendant's business prospects by updating his Ripoff Report by linking Defendant's new business to this lawsuit: [text omitted please refer to Defendant's reply] (p. 5)***

   **Denied.**  Defendant, believing Plaintiff would never learn the truth, has knowingly and

maliciously harmed ***Plaintiff*** by repeatedly ***lying*** that calling her a fetish model is libelous.[6]  Her

abuse of this process is frightening; her refusal to litigate this alleged libel no longer a mystery.

   UPDATE: at literally the last-minute this pleading was being prepared, Defendant

posted a highly defamatory message concerning Plaintiff, inciting one of her fans, Gilbert

Navarro, to say "Send him my way!"

### Reply To Response To Additional Averments

12. *[reply to AA 19]: Denied. [Insufficient information]* (p. 6)

13. *[reply to AA 20]: "It is denied that Defendant's counsel verbally abused Plaintiff. The entire allegation is specifically and expressly denied, except for the following: it is admitted that Defendant's counsel invited Plaintiff to call him, and that there was a telephone conversation.  It is admitted that Defendant's counsel stated that there was an organization willing to help Defendant defray what she would owe her lawyers if she ran out of funds.  It is admitted that Defendant's counsel told Plaintiff*

---

[6] ("He'll have to sue me for ***libel***; slander is spoken." -- J. Jonah Jameson, ***Spiderman*** (2005))

*that he had committed wrongdoing against Defendant that cost her damages, and that Plaintiff was told that Defendant was contemplating an action in a forum that had jurisdiction over both parties since Pennsylvania lacked personal jurisdiction over Defendant. It is admitted that in subsequent e-mail correspondence, Defendant offered a mutual stay-away settlement where each side would be barred by a Consent Decree from mentioning the other and...communicating with the other, but Plaintiff rejected that proposal[7] because he intended to continue to cyber-bully and cyber-stalk Defendant on the Internet.* (p. 6)

   a.    Defendant has not named a *single* jurisdiction outside of Pennsylvania which has personal jurisdiction over the Plaintiff, for the same logistical reasons she uses to disclaim this Court's lack of personal jurisdiction over her.

   b.    Defendant's bogus concept of stalking applies to her own conduct in linking to the ED page, yet still not to Plaintiff's, as even his imputed conduct is protected by the First Amendment.

   c.    The proposed decree would be impractical to enforce.

14.    *[reply to AA 21-22]: [Denied for lack of specific knowledge].*

   WHEREFORE, for the reasons set forth hereinabove, the instant motion should be DENIED.  It should also be stricken.

   This the 28th day of August, 2015

Gordon Roy Parker, Pro Se
4247 Locust Street, #119
Philadelphia, PA 19104
(267) 298-1257
SnodgrassPublish@aol.com
**PLAINTIFF**

---

[7] Plaintiff immediately agreed to everything but the online censorship (no direct contact, etc.).  Defendant fails to mention that several of her "internet allies" with histories of linking to the ED page themselves, two of whom mutually follow Defendant, were doing her "dirtywork" for her and would have a "field" day if Plaintiff were unable to rebut their targeting.

**IN THE UNITED STATES COURT
FOR THE EASTERN DISTRICT OF PENNSYVLANIA**

| | | |
|---|---|---|
| **GORDON ROY PARKER,** | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| **JACQUELINE FAYE GOLDHAGEN,** | : | **Case No:   15-cv-3304-TON** |
| **Defendant** | : | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION FOR LEAVE TO FILE SUPPLEMENTAL PLEADING IN RESPONSE
<u>TO DEFENDANT'S RULE 11 REPLY WITH ADDITIONAL AVERMENTS</u>**

Plaintiff Gordon Roy Parker, in the above-styled action, submits this Memorandum of Law in support of the instant motion.

## Memorandum Of Contents

**Memorandum of Contents** ...............................................................................i
**Memorandum of Points And Authorities**............................................................ii

**I.    BACKGROUND** ............................................................................... 1

**II.    ARGUMENT** ................................................................................. 3

    **A.    DEFENDANT HAS NOT WAIVED PERSONAL JURISDICTION** ................................... 3

        1.    Plaintiff's Jurisdictional DJA Argument Is Proper As Applied To This Case. ................... 3

            a. Long-Arm Infringement Precedent Is Split. ......................................... 3
            b. Judicial Discretion Under The DJA Is So Broad That
                The Court Can Rule For Either Party. ........................................... 4
            c. The Elements Of Personal Jurisdiction Have Been Satisfied. ....................... 4
            d. The Cease-And-Desist Letter Yielded DJA Jurisdiction ........................... 5
            e. Kehm Oil Co. v. Texaco ..................................................... 7

        2.    Defendant Has Clearly Waived Jurisdictional Objections By Litigating The Merits........ 8

            a.  All But The 12(b)(2) Motion Were Unnecessary Pleadings. ....................... 9
            b.  Plaintiff Has Not Filed Suit For An Improper Purpose. ......................... 10

    **B.    PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR RULE 11
    SANCTIONS IS NEITHER VEXATIOUS NOR HARASSING, NOR IS HE
    USING IT AS A VEHICLE TO DEFAME AND DISPARAGE DEFENDANT.** ............. 10

        1.    Defendant Is The Vexatious Harasser. ........................................... 11
        2.    Even If All Of Defendant's Averments Are True, This Motion Should STILL Be Denied.12

            a.  General. ................................................................ 12
            b.  *Rosen v. Tabby* Refutes Defendant's Argument ........................... 12

    **C.    PLAINTIFF'S CLAIMS ARE COGNIZIBLE** ........................................... 13

        1.    A Contract Existed Between The Parties. ......................................... 13

            a.  Defendant Imitated The Second Contract ................................... 13
            b.  The $325,000.00 Is Replacement Value, Not Commercial Value. ............... 14

        2.    Plaintiff's Claim For Defamation Is A Legitimate Constitutional Challenge. ............. 14
        3.    Plaintiff Has Proven Fraudulent And Negligent Misrepresentation. ................... 15

**III.    CONCLUSION** .......................................................................15

## Memorandum of Points And Authorities

*denotes Supreme Court Case*

## Cases:

*Brayton Purcell LLP v. Recordon & Recordon*, 07-15383 (9th Cir. 2009)....................................4
*Calder v. Jones*, 465 U.S. 783 (1984)................................................................4
*Gerber v. Riordan*, 535 F.Supp.2d 860 (2008).......................................................9
*Wilton v. Seven Falls Co.*, 515 US 277 (1995).......................................................4
*IDS Life Ins. Co. v. SunAmerica, Inc.*, 958 F.Supp 1258, 1268 (N.D. Ill 1997) ...........................5
*Kehm Oil Co. v. Texaco, Inc.*, 537 F.3d 290, 301 (3rd Cir. 2008) .....................................7,8
*Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355,1361 (Fed. Cir. 1998)...........7
*Insurance Corp. Of Ireland, Ltd. et al., Petitioners, v. Compagnie Des Bauxites De Guinee,*
    456 U.S. 694 (102 S.Ct. 2099, 72 L.Ed.2d 492) (1982) ..........................................9
*Democratic Republic of Congo v. FG Hemisphere Assocs., LLC,*
    508 F.3d 1062, 1064 (D.C. Cir. 2007).............................................................9
*Rosen v. Tabby*, 175 F.3d 1011 (1999) ...............................................................12
*Shaffer v. Stewart*, 473 A.2d 1017, 1019 (Pa. Super. Ct. 1984) .......................................12
*Dietrich Industries, Inc. v. Abrams*, 455 A.2d 119 (Pa. Super. Ct. 1982) ...............................12
*Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993)..............14
*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 256 (1985)..........................................14
*Vetrotex Certainteed Corp. v. Consolidated Fiber*, 75 F.3d 147 (3d Cir. 1996).........................14

## Statutes:

28 USC §2201 (Declaratory Judgment Act).............................................................3,4

## Rules:

Federal Rule 11....................................................................................3,9,12,14,15
Federal Rule 12(b)(2) .............................................................................4,9
Federal Rule 12(b)(6) .............................................................................9

ii

## I.    **BACKGROUND**

Defendant has been able to smugly rely on money to hire a "thug-in-a-suit" attorney to use the legal system to continue her online attacks against Plaintiff; in turn, her attorney is smugly relying on falsehoods to litigate by water-cooler stereotyping.  Plaintiff, a *pro-se* litigant who has been hospitalized for life-threatening (but curable) physical concerns multiple times in the past five months.  For this pleading, which required *two full days* of labor, Plaintiff had to reschedule a presurgical appointment by yet another week.

Without the complete fabrication about her not offering custom adult fetish-videos, Defendant's case is now in a similar state to that of her movie characters and career:



*Film Poster For THE WALKING DECEASED (2015)*[8]

---

[8] According to Wikipedia: "Rotten Tomatoes, a review aggregator, reports that 0% of 10 surveyed critics gave the film, in which Defendant "stars," a positive review; the average rating is 2.7/10."

## **Defendant's Initial Litigation Threat**

The key moment in a legal drama more befitting *The Good Wife* than federal court,

occurred here:





At the time, Defendant had "no idea who Plaintiff was."  Had she, she never would have attempted to bully him with a SLAPP.  Ever since, she has been using every imaginable "dirty trick" to obfuscate both the case, and the true aggressor, she.

## II.  ARGUMENT

To paraphrase *My Cousin Vinny*:

> *"Everything [defense counsel] just said is [contradicted by the facts]."*

Setting aside for a moment that this is a Rule 11 motion, and not a Rule 12(b)(2) or 12(b)(6) motion -- it could easily be mistaken for one -- Plaintiff has taken considerable time to address Defendant's "retelling" of those arguments here, ostensibly to defeat the underlying claims as a foundation for his Rule 11 claim, but the only significant point of Defendant's motion -- the improper-purpose imputation on Plaintiff -- has already been factually demolished by Defendant's repeated, malicious, and knowing lies concerning her adult-entertainment work, but will be legally demolished here, since, as will be made clear, no set of facts alleged entitles Defendant to Rule 11 relief.  The remainder of the Memorandum is bloated by Defendant's redundant recitals of refuted reasoning.

## A.  DEFENDANT HAS NOT WAIVED PERSONAL JURISDICTION

### 1.  Plaintiff's Jurisdictional DJA Argument Is Proper As Applied To This Case.

#### a.  Long-Arm Infringement Precedent Is Split.

Defendant cites a litany of cases in support of her claim that her cease-and-desist e-mail to Plaintiff triggered neither subject-matter nor personal jurisdiction, stating that:

> Significantly, many of these cases were intellectual-property infringement suits *were*[9] [sic] declaratory relief was requested. (Memo, p. 2).

---

[9] Defendant's proofreaderless counsel likely meant to say *where*.  In response to similar notations by Defendant regarding any of Plaintiff's oversights, he is legally blind (for now).

Assuming, *en arguendo*, that these cases are controlling in Pennsylvania, for cases filed in Defendant's home state of California, they are not. In Brayton Purcell LLP v. Recordon & Recordon, 07-15383 (9th Cir. 2009) -- an IP case -- the Ninth Circuit held that copyright infringement passes the *Calder-effects test* from Calder v. Jones, 465 U.S. 783 (1984). The split circuit rulings create the clearly unfair scenario where the party from California *always* gets "home court," something likely to be resolved by the Supreme Court.

### b. Judicial Discretion Under The DJA Is So Broad That The Court Can Rule For Either Party.

Defendant argues that the DJA claim is open-and-shut, when the statute was specifically designed to avoid that level of legal certainty, of say what a copyright action would have by comparison:

> "The Declaratory Judgment Act confers on the federal courts *unusual and substantial discretion* in determining whether to "declare" the rights of litigants. The Supreme Court emphasized that the statute permits, but does not require, a federal court to issue a declaratory judgment. See Wilton v. Seven Falls Co., 515 US 277 (1995)

To relate even remotely to a Rule 11 motion, the issue would have to be so resolved that only the most malicious or negligent of litigants would argue it. This court could literally rule for jurisdiction in either 1) this venue; 2) Pennsylvania state court; 3) Southern District of California; or 4) California state court. Dismissal with prejudice, also necessary for a Rule 11 motion, is not on the menu for a 12(b)(2) motion.

### c. The Elements Of Personal Jurisdiction Have Been Satisfied.

Though beyond the scope of jurisdiction as it relates to the DJA, Defendants make an argument against long-arm jurisdiction:

4

> Plaintiff has not satisfied any of the standards for personal jurisdiction since what he alleges [Defendant][10] did (i.e., send him after he contacted her via the **CustomsClub** link) is woefully inefficient. See <u>IDS Life Ins. Co. v. SunAmerica, Inc.</u>, 958 F.Supp 1258, 1268 (N.D. Ill 1997). (holding that general advertising and use of the internet are "not the type of purposeful activity related to the forum that would make the exercise of jurisdiction fair, just, or reasonable.").

Defendant's *straw-man* argument addresses a point Plaintiff was *not* trying to make, as his personal-availment arguments are not based on general advertising or the publication of a general website, but on specific, *targeted* communication which easily passes the *Calder-effects* test.[11]

### d.   <u>The Cease-And-Desist Letter Yielded DJA Jurisdiction.</u>

Here, Defendant arrives at the fundamental issue surrounding the DJA claim (excluding any supplemental jurisdiction from the other claims):

> *More to the point* [finally], there is no allegation that Defendant threatened to sue Plaintiff in Pennsylvania. The amateur lawyer that Plaintiff pretends to be conjured up some improbable legal theory that if Defendant sued, she would have to sue in Pennsylvania, but *that was never Defendant's intention,* nor is Plaintiff close to the mark in making the argument. (Memo, p. 4).

...immediately followed by a vicious, gratuitous personal attack:

> Given that Plaintiff admits in *Parker v. SS[A][12]* to being an *unemployed and unemployable pauper who suffers from mental illness and is totally disabled,* he is hardly the kind of *deep-pocket[ed][13] target* that would attract a contingent-fee based tort lawyer on the one hand... (<u>id.</u>)

Defendant just admitted that an "organization" was willing to pay for this lawsuit, eliminating any such obstacle. Nonetheless, Defense counsel, who charges $300-500 an

---

[10] Defendant's proofreaderless counsel has yet again conflagrated the parties. He obviously meant to refer to the **Plaintiff**.

[11] <u>Calder v. Jones</u>, 465 U.S. 783 (1984).

[12] Defense counsel's proofreaderless firm missed a few things: 1) Plaintiff is suing the Social Security Administration (SSA); 2) **SSI** is Supplemental Security Income, i.e., federal welfare. Plaintiff is on **SSDI**, which is not welfare at all, but disability insurance for those who have contributed through a lifetime of working, as Plaintiff had prior to 2010, when he went legally blind and developed several **physical** concerns which, combined with his mild bipolar condition (and resulting stigma), has qualified him. Plaintiff calls the hybrid catalyst **Whisability**.

[13] Defense counsel's proofreaderless firm could apparently use a refresher course on the proper use of adjectives.

hour (or more), has effectively inked the "unwritten rule" that litigation is about the money, and has done so while lying repeatedly and profusely about Plaintiff,[14] who 1) is not totally disabled; 2) is perfectly capable of working, when the hiring process is within the law; 3) has a 4.0 GPA from a year of college at SUNY; 4) earns low money because he is *stigmatized*; 5) has been on SSDI for just over *one* year, while having worked for *thirty*; 6) is in the *Ticket To work* program, where that, combined with 7) exceptionally strong legal protection and affirmative-action for disabled workers which has only recently become law.

Going forward, Plaintiff's economic prospects are excellent, especially with his finances stable, though not thriving. A solid foundation for rebuilding has been laid, but this does not suit Defendant's agenda. Going backward, Plaintiff grew up in a luxury hi-rise on the upper east side of Manhattan, a background and prep education no creditor can seize. It is beyond hypocritical for Defendant, a financially-unstable actress herself, to disparage anyone not a *9-5er* because they happen to be illiquid (not even necessarily broke). Massive illegal conduct, now furthered on two fronts by these parties, has been required for almost a quarter-century as the only way to make true the bogus claim that Plaintiff is unemployable and incapable of earning.

> ....and on the other, ***based on Plaintiff's prolific internet disparagement of Defendant in Plaintiff's postings and his program of aggressively stalking of [sic][15] Defendant***, Plaintiff would be likely to establish jurisdiction in a forum closer to her home -- ***if she actually decided to sue Plaintiff***. (id.)

Defendant incredulously argues in favor of *Plaintiff* getting jurisdiction in this case, due to her linking to the ED page, a form of ***criminal*** harassment and defamation specifically designed to target Plaintiff in his home, by attempting to brand him a violent

---

[14] Though Plaintiff was obviously speaking in the voice of his oppressors and how they perceive him, or want the world to think "everyone" perceives him, defense counsel has deliberately misconstrued the meaning to suit his argument.

[15] Defendant's proofreaderless law firm strikes again: ***"program of aggressively stalking of."***

pedophile.  Given that the alleged defamation underlying the stalking allegation was just proven

a lie (Defendant is, in fact, a fetish model, working with several women who are a great deal

more than that).   If Defendant truly feels stalked (which she never has, as her friendly e-mails to

Plaintiff even after this conflict began indicate), she is more than free to pursue *appropriate*

remedies with law enforcement, and if she wishes to file a civil case in another jurisdiction, she

is free to do that as well, and let the cases consolidate.

What Defendant is *not* free to do, due to issue preclusion and *res judicata*, is

"ring the bell for the first round of a prizefight and then refuse to come out of the corner," no

doubt because she just assumed that a threat from a *Hollywood Star's big-shot lawyer* would end

the matter, just like it always does in the media.  Upon learning that not only was Plaintiff not

afraid of her threat, but had commenced a declaratory lawsuit within *five days* of her initial

lawsuit threat, she panicked and "ran out of the schoolyard" in which she had, moments earlier,

called out Plaintiff.  As *My Cousin Vinny* would have said, Defendant needs to "*[bodily*

*function omitted] or get the [expletive deleted] off the pot.*"

e.   **Kehm Oil Co. v. Texaco**

Defendant cites Kehm Oil Co. v. Texaco, Inc., 537 F.3d 290, 301 (3rd Cir. 2008),

which held that:

> Moreover, the fact that [Texaco] sent Kehm a cease and desist letter does not rise
> to the level of purposeful availment for purposes of jurisdiction in Pennsylvania,
> *since the letter expresses the goal not to do business in Pennsylvania.* See Red
> Wing Shoe Co. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1361 (Fed. Cir.
> 1998) (holding that a "patentee [does] not subject itself to personal jurisdiction in a
> forum solely by informing a party who happens to be located there of suspected
> infringement," as "[grounding personal jurisdiction on such contacts alone would
> not comport with principles of fairness.")

The first key difference here is that Defendant stated that she *was taking legal*

*action*, not "considering her options," making her communication with Plaintiff a great deal

more than just a nonspecific threat. That defamation case would have to be heard in Pennsylvania; even Defendant tacitly admits this by claiming foreign jurisdiction on grounds other than defamation. The second difference is that, as was not the case in <u>Kehm</u>, Defendant Goldhagen was *entering,* not *exiting,* a contract with a Pennsylvania resident, and, during all times in controversy, was marketing not passive products, but *direct services* (hypnosis and, as discovered, custom fetish videos) to residents of the Commonwealth.

Finally, Defendant cites Plaintiff's "history of mental illness," without citing the history of those who have repeatedly cited said history when disparaging Plaintiff. The most notable, Derek "Odious" Trunk, who previously *published* content now on the ED page that the Defendant calls "truth," is now serving seventy-five months in prison for trafficking in child pornography. Linda McNamara, a former coach at Don Peters' gym, and leader of the *gymnastics mafia*, whose members Jeff Kalligheri and David Clanton are responsible for the pedophilic essay written while impersonating Plaintiff, and signed in his name, admitted to covering up sexual abuse in Peters' gym, while she was organizing the online campaign against Plaintiff. Kenneth "Shrink" Weitzner (not really a Shrink, it turned out), who also put Plaintiff on "mental illness [and financial] blast," committed suicide in 2010 with his wife, $700,000.00 in debt. If *history* is any indicator, Defendant and her counsel will not find themselves in very good company.

2. <u>**Defendant Has Clearly Waived Jurisdictional Objections By Litigating The Merits.**</u>

In the course of yet another *pot-kettle-black* attacks on Plaintiff, Defendant makes the curious comment that "Even *if* Defendant's Motion For Rule 11 Sanctions is deferred until Defendant's Motion To Dismiss is decided, the filing of a Rule 11 motion does not waive personal jurisdiction." (Memo, ¶ II(B)(2), p.4). ***IF!!?*** As precedent clearly shows, Defendant

would first have to prevail so decisively on all counts that, in light of the facts and Defendant's bald dishonesty to this court, it should have no difficulty denying the instant motion.

a.    **All But The 12(b)(2) Motion Were Unnecessary Pleadings.**

Defendant makes the *straw-man* argument that a Rule 11 motion, by itself, does not waive personal jurisdiction, when Plaintiff's waiver arguments are based on her 12(b)(6) motion and her attorney's notice of appearance (Docket Entry #2).    Precedent leans overwhelmingly in favor of waiver.

While Defendant (like Plaintiff) cites Gerber v. Riordan,[16] she leaves out the key passage, one which cites a Supreme Court ruling which perfectly captures the *spirit* of the voluntary waiver:

> *Only those submissions...that...cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking,"* Insurance Corp. Of Ireland, Ltd. *et al.*, Petitioners, v. Compagnie Des Bauxites De Guinee, 456 U.S. 694 (102 S.Ct. 2099, 72 L.Ed.2d 492) (1982), result in waiver of a personal jurisdiction defense.  (Emphasis added).

In Democratic Republic of Congo v. FG Hemisphere Assocs., LLC, 508 F.3d 1062, 1064 (D.C. Cir. 2007), the D.C. Circuit has noted that even where Rule 12(h) cannot be applied literally, courts should apply the rule's "rationale—that:

> "defendants should raise such preliminary matters *before the court's and parties' time is consumed in struggle* over the substance of the suit."

Defendant's 12(b)(6) motion fits this ruling like a poisoned glove.

Defendant claims, in her motion to dismiss, that this lawsuit has cost her "her life savings," and that it was improperly litigated by virtue of having been filed at all.  In reality, however, a cost-minded Defendant would simply have moved to dismiss for lack of jurisdiction, a relatively simple pleading requiring no more than a few hours of attorney time, and leaving her right to *then* move to dismiss under 12(b)(6).  The Rule 11 motion is extremely premature, and

---

[16] Gerber v. Riordan, 535 F.Supp.2d 860 (2008)

could have waited until the case was adjudicated. Thus, two completely unnecessary motions (at this time), and Defendant's willingness to let her counsel file them anyway, are the primary culprits in her legal bills. Any bill of costs for attorney fees should not reward ***Defendant's*** vexatiousness.

### b.  Plaintiff Has Not Filed Suit For An Improper Purpose.

More ***pot-kettle-black:*** this is exactly what Defendant has done with her pleadings, even including a direct link to the ED Page for no reason other than to further harass Plaintiff, who we now know was not disparaging Defendant at all thanks to the "smoking gun" ***CustomDreamModels.com*** tweet he uncovered. See subparagraph (B) below for a more through briefing.

### B.  PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR RULE 11 SANCTIONS IS NEITHER VEXATIOUS NOR HARASSING, NOR IS HE USING IT AS A VEHICLE TO DEFAME AND DISPARAGE DEFENDANT.

New section, old ***pot-kettle-black*** logic from Defendant, who imputed defamation upon Plaintiff based on a now-proven adult-entertainment lie of which her counsel was either aware or very willfully ignorant. Plaintiff has already briefed this Court extensively on Rule 11 in ¶ II(A-D) of his now-Amended Response to the instant motion, and points the court to that.

Defendant took special exception to when Plaintiff noted that (mostly according to her own words) she is:

> *"a thirty-four year-old actress whose career is fading so rapidly that, in her own words, hypnosis is all that stands between her and a career in softcore pornography."* This is precisely the type of trash talk[17] that Plaintiff has used on the internet to disparage Defendant's ***brand*** as an actress and hypnotherapist, and

---

[17] Defendant has called Plaintiff literally "every name in the book" and accused Plaintiff of being fixated on her due to her being this major Hollywood star, when, as we know now, a more accurate description may be that she is a custom adult fetish-video model who moonlights as an actress, or at least makes more money from her adult "side gigs" than from her film work, much of which is low-budget "indie" fare known for paying its talent next to nothing monetarily, though offering priceless plausible deniability when it comes to adult work. Even before Plaintiff found the "smoking gun" tweet, the overwhelming evidence had already pointed in that direction.

by being able to quote from an "official" document Plaintiff himself created and filed... (Memo, ¶ II(B), pp. 4-5).

Apparently, being branded by Defendant as an ***unemployable pedophile with bipolar delusions and hallucinations,*** among other things, doesn't measure up to altering a public Wikipedia page, or linking to Defendant's own tweets about producing custom adult fetish-videos, yet still denying being a fetish model in court despite public self-impeachment.

1.  **Defendant Is The Vexatious Harasser.**

Defendant has taken the phrase ***the best defense is a good offense*** to heart as if this past-life regressionist were Vince Lombardi in a previous incarnation.  Her threatening e-mail in response to Plaintiff's uncovering of her adult-entertainment activities included a litany of citations of ***criminal*** statues (omitted here due to lack of relevance), all designed to intimidate Plaintiff into dropping this case and voluntarily surrendering his First Amendment rights.  What Defendant averred ***before*** her story was impeached reveals the totality of her lack of character:

> Plaintiff cannot ***resist from relying***[18] on legal falsehoods to support his case and continuing to disparage and harass Defendant[19] in legal filings...See Exhibit A to Defendant's Motion For Sanctions for examples of Plaintiff's defamatory conduct. (Memo, pp.5-6)

***"Look, Ma!  No Rule 65 motion!!"*** -- Defendant, who has the option of using appropriate venues and instruments for bringing accusations of (quasi-)criminal wrongdoing, but would have to deal with nuisances like oaths, perjury laws, cross-examination, and the Dragonetti Act.  Plaintiff would like to add that if this Court, ***sua sponte,*** were to declare that accusations of criminal conduct, even in legal pleadings, constitute unsworn statements to law enforcement, it should not hold its breath awaiting a Notice of Appeal.

---

[18] The text should read "resist relying."
[19] This is from the litigant who has imputed pedophilia, unemployability, mental incompetence, ***total disability,*** and even current auditory and visual bipolar hallucinations.

2.   **Even If All Of Defendant's Averments Are True, This Motion Should STILL Be Denied.**

    a.   **General.**

Assuming, *en arguendo*, that Plaintiff is everything imputed upon him by Defendant, she is still not entitled to relief under Rule 11, which rises and falls on issues like good faith, and, quintessentially, *legal probable cause*, i.e., grounds for a reasonable Plaintiff to file a civil suit. This very low bar makes it difficult to prevail on a Rule 11 motion in general, and should make it impossible for Defendant in this case, especially since but for her own litigation threat to start these events, Plaintiff had no intention of filing suit.

    b.   **Rosen v. Tabby Refutes Defendant's Argument**

In Rosen v. Tabby, 175 F.3d 1011 (1999)**,** the Third Circuit -- located a short distance from where *Santa Claus* was booed and pelted with snowballs in 1967 -- has ruled on a case where the litigants held -- *gasp!* -- personal animosity towards one another, and done so thoroughly. Though this was a Dragonetti Act lawsuit, that statute and Rule 11 are similarly rooted:

> Rosen's evidentiary proffers might create a genuine *issue as to whether Kates had an ulterior, spiteful motive* underlying his prosecution of the fraud claims against him. However, that does not mean he has created a genuine issue as to whether the process was perverted into something other than what it appears to have been, an ordinary and legitimate action against Levin, the partnership, Rosen and his firm for wrongfully and fraudulently withholding funds. (Defs.' Mot. for Summ. J., Ex. "V" at 25.) Thus, *even if Rosen can establish that Kates was consumed with hatred for Rosen and his firm, and that Kates thought of little else throughout his waking hours,* he still has not created a genuine issue as to whether the primary purpose of the suit was anything other than recovering the Tabbys' share of the sale proceeds. See Shaffer,[20] 473 A.2d at 1019 (stating "*there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions*"). See also...Dietrich Industries, Inc.,[21] 455 A.2d at 124 (stating that in abuse of process, *original action must have been "somehow perverted so as to achieve an unrelated result")*. (Emphasis Added)

Rosen further held that the *entire* case must be frivolous, and this is certainly not:

> The primary issue is "whether the fact that one element of a pleading may have been alleged without sufficient probable cause, may be used as a basis for initiating

---

[20] *Shaffer v. Stewart*, 473 A.2d 1017, 1019 (Pa. Super. Ct. 1984)

[21] *Dietrich Industries, Inc. v. Abrams*, 455 A.2d 119 (Pa. Super. Ct. 1982)

a suit against the attorney, of a party, under *42 Pa. C.S.A. § 8351 et seq.*, where the other elements and theories of that pleading, alleged by the party are supported by probable cause?" ***The court determined it could not be.***

As previously briefed, Rule 11 has similar provisions for "truth told with bad intent" litigation.

## C.    **PLAINTIFF'S CLAIMS ARE COGNIZABLE**

Relying on negative stereotypes about ***pro se*** litigants, Defendant is attempting to equate a legitimate, well-pled dispute and legitimate constitutional challenge to Section 230, with ***this:***



Plaintiff is a far cry from the prisoner who sued over the ugliness of centerfolds in ***Playboy***,.

## 1.    **A Contract Existed Between The Parties**.

### a.    **Defendant Imitated The Second Contract**

Defendant asserts no contract; case law says otherwise:

Jurisdiction is proper when parties "reach out beyond one state and create continuing relationships and obligations with the citizens of another state." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 256 (1985). In cases where a out-of-state resident contracts with a forum resident, *whether the out-of-state resident initiated the relationship is crucial.* See Vetrotex Certainteed Corp. v. Consolidated Fiber, 75 F.3d 147 (3d Cir. 1996).

Simply initiating a contractual relationship with a Pennsylvania resident, however, is not the only contact in this case which goes towards establishing personal jurisdiction. Indeed, the Defendants also engaged in crucial communications about the performance of the contract directed at the state of Pennsylvania. See Grand Entm't Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 482 (3d Cir. 1993)(mail and telephone contacts may support jurisdiction). *These contacts cannot be dismissed as mere informational contacts, rather some of them go to the heart of the transaction.* (Emphasis added)

Defendant -- whose assertions of no contract were predicated on an "innocent" model whose "cat got the keyboard" and accepted ten times her normal rate for a video -- not only entered into the first contract via *CustomsClub*, but, by her own admission, initiated a *second* contract with a Pennsylvania resident, completely on her own initiative, for hypnotherapy paid for via PayPal, rather than a fetish-video paid for via *CustomsClub*.  If the first offer did not prove a contract specifically targeting Pennsylvania, Defendant's counteroffer certainly did.

b.   **The $325,000.00 Is Replacement Value, Not Commercial Value.**

Defendant has repeatedly misconstrued Plaintiff's reference to potential commercialization of the video (a common practice with custom videos) as if that were the source of his damages, when it was clear Plaintiff was referring to the *replacement value* of the video, given that he'd have to hire an equally trained and experienced SAG-AFTRA member for a union production to have a hope of duplicating what Defendant had offered for $1,000.00.

2.   **Plaintiff's claim for Defamation Is A Legitimate Constitutional Challenge.**

Defendant is correct, yet has a different interpretation of this fact than Plaintiff, who, like a growing chorus of legal experts, law enforcement, and especially revenge-porn victims

(for whom a special exception is being carved out in Congress), who have chided *230* as nothing short of a human-rights violation, specifically the ***right to be forgotten***, or the right-to-reputation which Plaintiff has argued here.  His constitutional challenge to *230* is brought in good faith, all but defeating Rule 11 and Dragonetti, laws designed for truly "out there" lawsuits, not disputed facts and legal interpretations.  That the case would win easily in any other western country -- as would be Defendant's against intermediaries -- is yet another indicator of sound legal reasoning unworthy of a Rule 11 sanction.  Finally, ***Section 230 has never been tested by the Supreme Court***, despite  most believing from the internet hype that it is "settled law," when it is anything but, and when a hundred-fifty years of precedent supports republisher and distributor liability.

### 3.    Plaintiff Has Proven Fraudulent And Negligent Misrepresentation.

The new evidence that Plaintiff has uncovered should be sufficient to carry a motion for partial summary judgment on all five claims.  Otherwise, the court has already been briefed. For example, she argues in ¶ II(C)(3):

> Plaintiff fails to allege fraudulent misrepresentation because Defendant did not create the CustomsClub website in order to fraudulently induce Plaintiff.

Defendant's conduct, to Plaintiff and this court, has been the ***epitome*** of fraud.

## III.  CONCLUSION

For the reasons set forth hereinabove, the instant motion should be DENIED.

This the 28th day of August, 2015

Gordon Roy Parker, Pro Se
4247 Locust Street, #119
Philadelphia, PA 19104
(267) 298-1257
SnodgrassPublish@aol.com
**PLAINTIFF**

## IN THE UNITED STATES COURT
## FOR THE EASTERN DISTRICT OF PENNSYVLANIA

|  |  |  |
|---|---|---|
| **GORDON ROY PARKER,** | : | |
| **Plaintiff** | : | |
| v. | : | |
| **JACQUELINE FAYE GOLDHAGEN,** | : | **Case No:  15-cv-3304-TON** |
| **Defendant** | : | |

## <u>CERTIFICATE OF SERVICE</u>

I, Gordon Roy Parker, Plaintiff in the above-styled action, hereby certify that I have served

a copy, by **regular mail and e-mail**, to Defendants' counsel of record, Plaintiff's Sur-Reply To

Defendant's Motion For Rule 11 Sanctions, as follows:

> Gary Green, Esq.
> Sidkoff Pincus & Green
> 1100 Market, 27th Floor
> Philadelphia, PA  19107-3601

This the 28th day of August, 2015.

FILED

AUG ?? 2015

Gordon Roy Parker, Pro Se
4247 Locust Street, #119
Philadelphia, PA 19104
(267) 298-1257
SnodgrassPublish@aol.com
PLAINTIFF